IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

RONALD E. HASTINGS,          :
                             :
        Plaintiff,           :
                             :
                             :
                             :
v.                           :        C.A. No. S19C-06-028 RFS
                             :
                             :
                             :
JESSICA WATSON, and          :
SUSSEX CONSERVATION DISRICT  :
                             :
                             :
        Defendants.          :

## MEMORANDUM OPINION

Submitted: 10/18/2019
Decided: 11/19/2019

*Upon Defendants' Motion to Dismiss. Granted.*

Ronald E. Hastings, 3140 Ponte Vedra Blvd., Ponte Vedra Beach, FL 32082, Pro Se Plaintiff.

Michael R. Smith, Esq., 8866 Riverside Dr., Seaford, DE 19973, Attorney for Defendants.

STOKES, R.J.

# I. INTRODUCTION

Before this Court is Jessica Watson's ("Watson") and the Sussex Conservation District's ("SCD") Motion to Dismiss. The motion follows Ronald Hastings's ("Plaintiff") complaint, asserting two counts: Count I for fraud and Count II for malfeasance.

For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED**.

# II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff's allegations stem from interactions between Plaintiff and the Defendants during the development of Phase V of the Rivers End residential community. Rivers End is a housing development in Sussex County. Developed over five different phases, Phase V began in 2004. Plaintiff was the developer for Phase V.

Watson is the Sediment and Stormwater Program Manager for the SCD (collectively, the "Defendants"). SCD is the agency that was responsible for implementing the Sediment and Stormwater Program.

In June, 2004, Plaintiff submitted the stormwater management plan for Phase V. SCD then approved the plan. Plaintiff completed the infiltration basin stormwater facility, a key component of the plan, in October, 2004.

In February, 2006, Watson notified Plaintiff that an unauthorized ditch had been dug, connecting two small ponds to the Stormwater Pond in Phase V. She informed Plaintiff that the ditch did not appear on the approved plan and it had to be closed. Plaintiff agreed to close the ditch, however, he informed Watson that he had no knowledge of the ditch or who dug the ditch. Plaintiff asserts that the ditch was filled as SCD instructed in December, 2006.

In January, 2007, Plaintiff received a letter from Watson notifying him that the work performed (the unauthorized ditch and the ponds) were contributing runoff to the stormwater

2

facility in Phase V. Watson further stated that by increasing the contributory drainage area to the pond, the pond had the potential to increase the flooding on the other properties. Watson did not receive a response to her letter.

In June, 2007, Plaintiff received a second letter from Watson. This letter referenced the January, 2007 letter, requesting a response. Thereafter, Plaintiff responded to the letters, disputing their contents.

In 2009, Plaintiff sold his interest in the open lands in Phase V and the infiltration basin facility to the Rivers End Property Owners Association, Inc. ("REPOA"). As a result, REPOA assumed the responsibility of maintaining, repairing, replacing, and improving the facilities in Phase V.

In April, 2014, an on-site meeting was held to address a Phase V property owner's concern regarding the drainage. In May, 2014, Watson emailed Plaintiff regarding the unresolved issues related to the drainage area. Watson informed Plaintiff that the issue was brought to Plaintiff's attention in 2007 but it was still outstanding. She further told Plaintiff that the stormwater facility was not in compliance with the approved plan and requested an evaluation be completed to determine the necessary plan of action.

In October, 2016, the Department of Natural Resources and Environmental Control ("DNREC") met with Watson in Phase V. They performed an on-site inspection and found that the facility drainage area did not conform to the approved plan. In December, 2016, DNREC issued a Notice of Violation to the Plaintiff, requiring the Plaintiff to submit "as builts" to demonstrate compliance with State Regulations. In addition, if determined modifications were required, Plaintiff was to develop a plan to rectify deficiencies and submit the plan for approval.

In June, 2018, DNREC issued a Notice of Administrative Penalty Assessment and Secretary's Order to the Plaintiff because he failed to comply with the corrective actions.

Plaintiff appealed the Administrative Penalty Assessment and Secretary's Order to the Environmental Appeals Board ("EAB"), in July, 2018. The EAB affirmed the order in March, 2019. Plaintiff did not appeal the EAB's decision.

Plaintiff is now before this Court seeking relief, alleging that Watson, as an employee of SCD, committed fraud and malfeasance to the detriment of Plaintiff.

### III. THE PARTIES' CONTENTIONS

Plaintiff contends that Watson made false allegations to Plaintiff regarding the small ponds and that she knew those allegations to be false. In addition, she further made false statements to and concerning the Plaintiff about the noncompliance issue surrounding the drainage problem on Phase V. Plaintiff further contends that Watson ignored evidence and made "fabricated allegations" to declare the stormwater facility not in compliance.[1] Plaintiff alleges that Watson's letters falsely accused him of not responding to the January 10, 2007 letter and she did not correct this error. Plaintiff argues that DNREC took Watson's letters as factual when issuing the Notice of Violation against him.[2]

Plaintiff further contends that Watson used her position at SCD to make false allegations and fabricated assertions about the Plaintiff.[3] Plaintiff contends that Watson did this so that a Notice of Violation and an Administrative Order would be issued by DNREC.[4] Plaintiff further argues that Watson and the SCD had a responsibility to ensure that the files sent to DNREC were accurate and Watson should have corrected any inaccuracy that DNREC could have

---

[1] Pl.'s Comp. at ¶ 62.
[2] *Id.* at ¶ 67.
[3] *Id.* at ¶ 71-72.
[4] *Id.* at ¶ 72.

4

misinterpreted in the files.[5] Plaintiff claims that Watson's actions were malicious and injurious to the Plaintiff.

Defendants have moved for dismissal, or in the alternative for summary judgment. In support of their motion, Defendants assert the following: (1) they are immune from suit under the State Torts Claims Act; (2) Plaintiff's claims are barred by the statute of limitations; (3) Plaintiff's claims are barred as a result of Plaintiff's failure to timely appeal the EAB Order; (4) Plaintiff's claims are barred by the doctrines of collateral estoppel and *res judicata*; and (5) Plaintiff has failed to plead his claims with the level of specificity required by Rule 9(b).[6]

## IV. STANDARD OF REVIEW

Superior Court Civil Rule 12(b)(6) provides that a defendant may bring a motion to dismiss if the claimant fails to state a claim upon which relief can be granted.[7] Prior to granting a motion, the Court must: (1) consider all well-pleaded factual allegations as true; (2) even accept vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (3) draw all reasonable inferences in favor of the non-moving party; and (4) find dismissal inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[8] "However, the Court "does not blindly accept as true all allegations of a complaint nor draw inferences from them in plaintiff's favor unless they are reasonable inferences."[9] In considering a motion to dismiss under Rule 12(b)(6), the court generally may not consider matters outside the complaint.[10]

---

[5] *Id.* at ¶ 77.
[6] Def.'s Opening Br.
[7] Super. Ct. Civ. R. 12.
[8] *Cent. Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).
[9] *Smith v. Delaware State Police*, 2012 WL 5355639, at *2 (Del. Super. Ct., 2012).
[10] Super. Ct. Civ. R. 12.

5

## V. DISCUSSION

Defendants argue that Plaintiff has failed to plead his claims with the required level of specificity. Superior Court Civil Rule 9(b) provides that "in all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity."[11] "The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[12]

Defendants argue that Plaintiff has failed to satisfy the specificity requirements of Rule 9(b). Defendants claim that Plaintiff fails to identify what the evidence may be and what specific fraudulent act is to be shown by the evidence.

The Court finds that Plaintiff meets the particularity requirements because the circumstances of the alleged fraud are pled sufficiently "to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."[13] In the complaint, Plaintiff alleges that Watson falsely accused Plaintiff of not responding to the January, 2007 letter and DNREC relied on this.[14] DNREC then issued the Notice of Violation.[15] Plaintiff pleads the alleged misrepresentation that Defendants are accused of to have the notice issued against him. He pleads the time, place, and parties of the alleged fraud.

---

[11] Super. Ct. Civ. R. 9.
[12] *Mooney v. Pioneer Nat. Res. Co.*, 2017 WL 4857133, at *4 (Del. Super. Ct., 2017).
[13] *Sammons v. Hartford Underwriters Ins. Co.*, 2010 WL 1267222, at *6 (Del. Super. Ct. Apr. 1, 2010).
[14] Pl.'s Comp. at ¶ 67.
[15] *Id.* at ¶ 68.

6

At this stage, it is not the Court's role to decide whether Plaintiff's allegations are supported by the evidence. To satisfy Rule 9(b), Plaintiff just needs to plead with particularity "time, place, contents of the alleged fraud, as well as the individual accused of committing the fraud."[16] It must be determined if Plaintiff's allegations are sufficiently pled and Defendants are on notice of the alleged misconduct.[17] The Court finds Plaintiff satisfied the requirements of Rule 9(b).

Defendants also argue that they are immune under the Tort Claims Act. Where there is a failure to adequately plead facts that would negate immunity provided by the Tort Claims Act, the appropriate mechanism may be a motion to dismiss.[18] Defendants argue that Plaintiff fails to adequately plead facts sufficient to defeat the qualified immunity afforded to Defendants under the Torts Claims Act.

Under the State Torts Claims Act, a conservation district or agency of the State is immune from a cause of action when the following elements are present:

> (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority; (2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and (3) The act or omission complained of was done without gross or wanton negligence.[19]

Plaintiff claims that Watson made fabricated allegations and used the SCD letter to falsely accuse the Plaintiff and obtain the Notice of Violation.[20] He further claims that

---

[16] *McCann Aerospace Machining, LLC v. McCann*, 2016 WL 3640368, at *4 (Del. Super. Ct. June 30, 2016) (quoting *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at * (Del. Super. Ct. Sept. 25, 2015)).
[17] *Sammons*, 2010 WL 1267222, at *6.
[18] *Hale v. Elizabeth W. Murphey Sch., Inc.*, 2014 WL 2119652, at *3 (Del. Super. Ct. May 20, 2014).
[19] 10 Del. C. § 4001.
[20] The letters that are referenced include the January, 2007 letter, the June, 2007 letter, and the May, 2014 letter.

7

Watson's actions were malicious. To overcome the qualified immunity, Plaintiff cannot assert mere allegations without stating facts to support his claims.[21] Defendants argue that Plaintiff fails to satisfy his burden of pleading with particularity.

The Plaintiff has the burden of proving that at least one of the conditions for immunity are absent.[22] The Court thus looks at the sufficiency of Plaintiff's complaint to determine if it overcomes the requirements. The claims Plaintiff puts forth in support of overcoming qualified immunity are that Defendants did not act in good faith and Defendants acted with gross negligence. Plaintiff also argues that Watson exceeded the authority of her position. However, he pleads no facts to support this contention.

"The Delaware Supreme Court has equated gross negligence to criminal negligence under Delaware's criminal code...."[23] "Gross negligence is a higher level of negligence representing an extreme departure from the ordinary standard of care."[24] The Plaintiff must state "the circumstances constituting ... negligence ... with particularity."[25] To support this contention, Plaintiff relies on Watson's allegations that the drainage area was not that of the approved design. Plaintiff alleges that Watson purposely ignored evidence in the SCD files that referenced the ponds and ditch, ignored evidence in the SCD files that was contrary to Watson's assertions in the January, 2007 letter, failed to verify Plaintiff's assertions regarding the drainage area, and provided incorrect information regarding the

---

[21] *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990) ("All of those allegations are conclusory. They violate Rule 9(b) of the Superior Court Civil Rules of Procedure, which requires a plaintiff to state the circumstances involving all allegations of fraud, negligence, mistake or condition of mind with particularity").
[22] *Id.*
[23] *Wonnum v. Way*, 2017 WL 3168968, at *3 (Del. Super. Ct., 2017) (citing *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987)).
[24] *Hughes ex rel. Hughes v. Christiana Sch. Dist.*, 950 A.2d 659 (Del. 2008) (citing *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990)).
[25] *Tews v. Cape Henlopen Sch. Dist.*, 2013 WL 1087580, at *2 (Del. Super. Ct. Feb. 14, 2013).

letters. Plaintiff pleads that Watson acknowledged inaccuracies during her deposition but failed to correct them, providing DNREC false information.

Plaintiff also argues that Watson acted in bad faith. "Bad faith 'contemplates a state of mind affirmatively operating with furtive design or ill will.'"[26] It is not simply "bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Plaintiff alleges Watson used her position to fabricate allegations, injuring the Plaintiff. Plaintiff argues that Watson was aware of the inaccuracies she put forward. He claims that Watson's actions were malicious and she intentionally provided false information. Plaintiff's allegations could reasonably be found to constitute bad faith and possible gross negligence on part of the Defendants. Such allegations, at this stage, are sufficient to overcome dismissal pursuant to the Tort Claims Act.[27]

Defendants also argue that Plaintiff's claims are time-barred by the applicable statute of limitations. Claims based in fraud are subject to a statute of limitations of three years.[28] "[T]he statute of limitations begins to run when the fraud is 'successfully penetrated.'"[29] "[T]olling only applies 'in certain narrowly carved out limited circumstances when the facts at the heart of the claim are so hidden that a reasonable

---

[26]*Jackson v. Minner*, 2013 WL 871784, at *7 (Del. Super. Ct. Mar. 1, 2013), *aff'd*, 74 A.3d 654 (Del. 2013) (citing *Brittingham v. Bd. of Adjustment of City of Rehoboth Beach*, 2005 WL 1653979, at *1 (Del.Super.Apr.26, 2005)).
[27]*See Clouser v. Doherty*, 175 A.3d 86 (Del. 2017) ("Clouser alleges that Barton prepared the Barton Letter with malice and reckless disregard for the truth, and intentionally sent false information to the PDOE. Although these allegations are tenuous, we, like the Superior Court, cannot dispute their accuracy right now. Under the plaintiff-friendly standards applied on a motion to dismiss, they are sufficient to raise reasonably conceivable claims of a lack of good faith and possible gross negligence to survive a motion to dismiss. After further development of the record, these allegations may prove unsupported, and Barton might be entitled on summary judgment to qualified immunity. But, the Superior Court erred in dismissing these claims at this stage of the proceedings.").
[28] 10 Del. C. § 8106.
[29] *Ashland LLC v. Samuel J. Heyman 1981 Continuing Tr. for Heyman*, 2018 WL 3084975, at *8 (Del. Super. Ct. June 21, 2018) (citing *Playtex, Inc. v. Columbia Cas.*, 1993 WL 390469, at *3 (Del. Super. Sept. 20, 1993)).

9

plaintiff could not timely discover them.'"[30] Plaintiff does not claim that he could not or did not timely discover the alleged acts of fraud nor does he claim Defendants actively concealed them.

The underlying facts at the heart of this case involve the interactions that occurred between Plaintiff and Defendants in 2007. Those instances would be barred by the statute of limitations; however, Plaintiff asserts that in October, 2016, Watson and DNREC had an on-site meeting where Watson perpetrated a fraud. Shortly after, DNREC issued the Notice of Violation. Plaintiff claims that the Notice of Violation is similar to the contents of Watson's letters. He pleads that Watson falsely accused the Plaintiff of not responding to her January, 2007 letter. He also claims Watson knew the information provided was false but did not correct it. Plaintiff alleges that at the October, 2016 meeting, Watson perpetrated a fraud. Therefore, should the allegations give rise to a viable claim, the 2016 act would not be barred by the statute of limitations.

Defendants also argue that Plaintiff's claims are time-barred as a result of Plaintiff's failure to timely appeal the EAB Order. The EAB Order was issued in March, 2019. Plaintiff had to appeal to this Court within thirty days of receipt of the written opinion of the EAB. Defendants claim that the case now before this Court involves the same facts considered by the EAB and Plaintiff seeks relief in the exact amount of the administrative fine DNREC levied against him.

Plaintiff failed to file a timely appeal and is barred from attempting to do so now.[31] As Plaintiff points out, the Secretary's Order, which was affirmed by the EAB, found

---

[30] *Id.* quoting *AM Gen. Hldg. LLC v. Renco Grp., Inc.*, 2016 WL 4440476, at *13 (Del. Ch. Aug. 22, 2016).
[31] The Court takes judicial notice of the Court's August 2, 2019 Order dismissing *Hastings v. DNREC* for Appellant's failure to timely appeal the EAB decision.

10

Plaintiff in violation for failing to comply with the approved plan and failing to obtain a permit. The center of Plaintiff's case before this Court now focuses on Watson's alleged attempts to orchestrate an artificial non-compliance issue. This Court finds that Plaintiff is trying to cure his failure to timely appeal the EAB Order and cannot do so under the case before us now.

Defendants argue that Plaintiff's claims are also barred under the doctrines of *res judicata* and collateral estoppel. "Essentially, *res judicata* bars a court or administrative agency from reconsidering conclusions of law previously adjudicated while collateral estoppel bars relitigation of issues of fact previously adjudicated."[32]

Defendants argue that in the EAB appeal, the Plaintiff here was the appellant and DNREC was an appellee. Defendants claim SCD operates under the administration and direction of DNREC and as such, the parties should be considered the same for purposes of applying the doctrine of *res judicata*. They also argue that the matters heard in the EAB appeal came from the same factual background as those presented in this case. Defendants argue that the claims raised in this case should have been addressed in the EAB appeal and as such, dismissal is warranted.

"*Res judicata* will bar a claim where the party raising the doctrine can show satisfaction of the following five-part test: (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a

---

[32] *City of Newark v. Unemployment Ins. Appeal Bd.*, 802 A.2d 318, 324 (Del. Super. Ct. 2002); *Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del.2000).

11

final decree."[33] "When a defendant claims that the doctrine of *res judicata* bars a subsequent action, the defendant must show that the elements of *res judicata* exist - that is, that the same transaction forms the basis for prior and subsequent suits and that the claim for relief could have been properly presented in the prior action"[34]

In the prior proceeding, Plaintiff challenged an order imposed by DNREC. The prior proceeding involved the legitimacy of the order issued against Plaintiff for his failure to comply. The case Plaintiff now brings before this Court is a claim against Defendants for Watson's alleged attempts to orchestrate an artificial non-compliance issue to have the order issued.[35] "The determination of whether to apply *res judicata* is based on the underlying transaction, not the type of relief sought or substantive legal theories."[36]

"To properly assert *res judicata* as a bar to a plaintiff's claim, a defendant must show that first, the same transaction formed the basis for both the present and former suits; and second, plaintiff neglected or failed to assert claims which in fairness should have been asserted in the first action."[37] "Upon such a showing, the plaintiff, to prevent dismissal, must then show that there was some impediment to the presentation of the entire claim for relief in the prior forum."[38] The same issues and interactions before the EAB are before this Court now. Specifically, the noncompliance and the issuance of the violation continue to be in dispute. Defendants argue that Plaintiff cross-examined Watson in that proceeding

[33] *Washington House Condominum Ass'n of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079, at *11 (Del. Super. Ct. Aug. 8, 2017) (citing *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del. 2009)).
[34] *Esposito Hauling & Contracting Co., Inc. v. Bldg. & Const. Trades Council of Delaware*, 1995 WL 269390, at *4 (Del. Super. Ct. Feb. 23, 1995) (citing *Maldonado v. Flynn*, Del. Ch., 417 A.2d 378, 381 (1980)).
[35] *See Mott v. State*, 49 A.3d 1186, 1190 (Del. 2012) (stating "[a]lthough the issues in the mechanics lien case are not the same as this case, the fourth element is satisfied because the 'bar of res judicata extends to all issues which might have been raised and decided in the first suit as well as to all issues that actually were decided'").
[36] *Villare v. Beebe Med. Ctr., Inc.*, 2013 WL 2296312, at *3 (Del. Super. Ct. May 21, 2013).
[37] *Wilson v. Brown*, 36 A.3d 351 (Del. 2012).
[38] *Id.* (citing *Kossol v. Ashton Condo. Ass'n*, 1994 WL 10861, at *2).

and any claim raised in the matter before this Court should have been addressed by Plaintiff in the EAB appeal. Plaintiff fails to show there was some impediment preventing him from raising the alleged fabricated noncompliance before the EAB when he had the opportunity to. Therefore, Plaintiff's claims are barred by the doctrine of *res judicata*.

Defendants also argue that the doctrine of collateral estoppel bars Plaintiff's claims. "A claim will be collaterally estopped only if the same issue was presented in both cases, the issue was litigated and decided in the first case, and the determination was essential to the prior judgment."[39] "The party asserting collateral estoppel has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding."[40]

Defendants argue that collateral estoppel applies here because the EAB considered the records and testimony of Watson relating to the noncompliance issues. Therefore, Defendants conclude that the EAB has considered and addressed the same factual issues before this Court now. This Court agrees. Both Plaintiff and Defendants assert that the EAB considered and affirmed the Secretary's Order charging Plaintiff for failing to comply. Plaintiff stated in his complaint that the Notice of Violation was very similar to Watson's letters and that Watson participated in preparations of the Administrative Order.

Plaintiff attempts to reargue that he was in compliance and Defendants' actions misrepresented noncompliance. Though the EAB determined Plaintiff was not in compliance, Plaintiff attempts to have this Court determine whether Defendants wrongfully portrayed a noncompliance issue. Plaintiff is attempting to relitigate the same

---

[39] *Proctor v. State*, 931 A.2d 437 (Del. 2007) (citing *Sanders v. Malik*, 711 A.2d 32, 33–34 (Del.1998)).
[40] *Proctor v. State*, 931 A.2d 437 (Del. 2007) (citing *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)).

issues that the EAB considered in issuing its decision, therefore, Plaintiff's claims for fraud and malfeasance are further barred by collateral estoppel.[41]

Although Plaintiff can overcome some of Defendants' arguments, dismissal is still warranted. The issue before this Court is whether Defendants committed fraud and malfeasance to orchestrate the appearance of noncompliance, causing the Plaintiff injury. As discussed, Plaintiff should have timely appealed the EAB decision if he wanted to challenge the validity of the EAB decision and order. Plaintiff's claims are procedurally barred and as a result, must be dismissed.

## VI. CONCLUSION

Considering the foregoing, all counts in the complaint are procedurally barred. Therefore, the complaint is dismissed with prejudice. Defendants' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

---

[41] *See Acierno v. New Castle Cty.*, 679 A.2d 455, 460 (Del. 1996) (stating "All that matters, for purposes of an issue preclusion inquiry, is whether the two decisions purported to address the same issue.").

14