**CITY OF NEWARK,**
**Employer/Appellant**

v.

**UNEMPLOYMENT INSURANCE**
**APPEAL BOARD, and Tobie J.**
**McIntosh, Employee/Appellee.**

**C.A. No. 01A–10–008–SCD.**

Superior Court of Delaware,
New Castle County.

Submitted March 7, 2002.
Decided June 19, 2002.

---

Roger A. Akin, Esq., City of Newark, City Solicitor, Newark, for Employer/Appellant, City of Newark.

Stephani Ballard, Esq., Dept. of Justice, Wilmington, for Employee/Appellee, Unemployment Ins. Appeal Bd.

Robert C. McDonald, Esq., Silverman & McDonald, Wilmington, for Employee/Appellee, Tobie J. McIntosh.

DEL PESCO, Judge.

## MEMORANDUM OPINION

This is an appeal by the City of Newark ("City") from a decision of the Unemployment Insurance Appeal Board granting unemployment benefits to Tobie J. McIntosh ("the claimant"). The appeal raises a novel issue: the collateral estoppel effect of an administrative proceeding, not subject to an appeal to any court, in a subsequent proceeding to determine eligibility for unemployment compensation benefits.

### Procedural Background

On April 3, 2001, a three-member Criminal Justice board terminated the claimant after finding that he had violated several regulations and falsified an official report. Claimant was subsequently awarded unemployment benefits, because a claims deputy found that the City had not established willful or wanton conduct by claimant. The City appealed; an appeals referee affirmed. The City appealed again and, after a full hearing, the Unemployment Insurance Appeal Board ("Board") affirmed. The City submitted this appeal to the Superior Court of Delaware on March 7, 2002.

### Facts

#### Evidence Below

The dispute between the parties arises from an incident which occurred on February 13, 2001 when the claimant, a police officer with the City of Newark, responded to a complaint at an apartment where a suspicious person was trying to enter. The essence of his objectionable conduct was his failure to report and inform a later arriving officer that the suspect was armed.

The Unemployment Insurance Appeal Board (the "Board") had before it the decision of the Appeals Referee, which provides a succinct summary of the underlying events:

> The claimant was employed as a police officer by the City of Newark from January 9, 1997 until April 5, 2001 when he was terminated from his employment. . . . These charges were the result of an incident which occurred on February 13, 2001. The claimant is alleged to have filed a false report by

omitting the fact that the suspect in the incident was carrying a weapon (knife) when he had been notified of the same on an MDT transmission prior to responding to the call. An investigation was conducted and the claimant was presented with these charges on March 9, 2001.

\* \* \* \* \*

The professional standards unit officer who conducted the investigation indicated that the claimant was charged with failing to complete a report, neglect of duty and falsifying a report. The truthfulness charge against the claimant would impinge his credibility in the future when called upon in certain cases. The claimant's omissions on the incident report of February 13, 2001 amounted to a falsification of such report.

The claimant indicated that he recalls the incident of February 13, 2001 but does not recall receiving an MDT transmission which the employer said he received advising him the suspect had a knife. He was not feeling well and should have called in sick, which he did for the two days following the incident. The claimant realizes that there were gaps in the report of such incident but he did not intentionally falsify any report or omit any information. He has no valid excuse for what happened and probably used extremely bad judgement [sic] when he filed the report. He is just thankful that no one was hurt. The claimant stated that a different kind of report should have been filled out for the incident instead of the report he filed.[1]

Further evidence was presented to the Board by Gerard Conway, Chief of Po-

1. Record Unemployment Insurance Appeal Board (No. 220388) [hereinafter "Record"] at 129.

lice, City of Newark and the claimant, and was summarized in its decision:

Gerard Conway was sworn and testified that the claimant was an employee for four years. There were other cases where they felt the claimant was less than truthful.

The claimant was sworn and testified that he became aware of the knife from the victim. He does not remember receiving the information from the MDT. Another officer arrived at the scene separately. He does not remember if that officer was present at the time the victim told him about the knife. He was not well. He took off the next two days.[2]

### Disciplinary Proceedings

On March 7, 2001, a disciplinary charge alleged that claimant violated seven rules and regulations. As a police officer, the claimant was entitled to the protection of the Law Enforcement Officers' Bill of Rights.[3] On April 3, 2001, the alleged conduct violations were heard by a board of three officers convened under the auspices of the Criminal Justice Council (the "CJC board").[4] The CJC board concluded that the claimant had violated the rules and regulations charged. In particular, the CJC board found that he had knowingly falsified an official report and had failed to be truthful.[5] It accepted the City's recommended penalty of dismissal "as a combined penalty for all of the charges."[6]

Based on the CJC board's findings, the Chief of the Newark Police suspended the claimant and recommended to the City Manager that claimant be discharged. Claimant appealed to the City Manager. The City Manager affirmed and claimant was terminated. No further review is permitted by the statute.

### Unemployment Compensation Proceedings

After his termination, claimant filed an application for unemployment benefits. A claims deputy found that the City did not establish willful or wanton conduct by claimant, thus, unemployment compensation benefits were awarded. The City appealed; an appeals referee affirmed.[7] The City appealed again and, after a full hearing, the Unemployment Insurance Appeal Board affirmed.[8]

---

2. *Id.* at 168.

3. *Del.Code Ann.* tit. 11, §§ 9200–9209 (2001).

4. *Del.Code Ann.* tit. 11, §§ 9203, 9205(b) (2001).

5. Record, *supra* note 1, at 59.

6. *Id.* at 72.

7. The Appeals Referee concluded:

   The employer's administrative decision to discharge the claimant is certainly understandable and not questioned by this tribunal. However, the claimant's actions in this single isolated incident did not rise to the level of wilful [sic] or wanton misconduct or just cause for discharge within the meaning of [*Del.Code Ann.* tit. 19,

§ 3315(2)]. Since there was no just cause for the claimant's discharge, he is entitled to benefits.
   *Id.* at 16.

8. The Board concluded:

   The Appeals Referee found that the claimant was discharged from his work without just cause in connection with his work. The Board agrees and affirms the Referee for the following reasons.
      The Board writes a separate opinion to comment upon the employer's arguments concerning truthfulness and honesty. The Board agrees that the truthfulness of a police officer should be beyond question and an employer may terminate for untruthful behavior. The Board also concludes, however, that the standard that applies to the question of whether a claimant receives unemployment benefits,

### Standard of Review

■ The scope of review is limited to a determination of whether there was substantial evidence to support the findings of the Board.[9] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[10] If there is substantial evidence and no mistake of law, the Board's decision must be affirmed.[11]

### Discussion

#### Substantial Evidence to Support the Board's Finding

■ The City argues that the Board's decision was not supported by substantial evidence because they concluded that the claimant's inconsistent and untruthful actions, and intentional conduct, exceed the requisite standard of willful or wanton behavior.

■ The employer has the burden of establishing that a termination disqualifying a former employee from benefits was for just cause.[12] Just cause has been held to mean a willful or wanton act violating the employer's interest, the employee's duties, or the employee's expected standard of conduct.[13] Wanton has been defined as heedless, malicious or reckless,

while willful means actual, specific or evil intent.[14]

Based on the claimant's testimony, there was sufficient evidence for the Board to conclude that the claimant's conduct was negligent in this one incident, rather than wanton or willful. The claimant testified that he could not remember either receiving the MDT or the other officer's complaint about not being forewarned regarding the potentially armed suspect. While the Chief of the Newark Police indicated that another investigation had commenced regarding the claimant's memory lapses, that investigation ceased once claimant was terminated. Accordingly, there is substantial evidence that the claimant did not act in a willful or wanton manner or pattern, but in a negligent or reckless manner on one occasion.

#### Res Judicata and Collateral Estoppel

■ The City argues that the Board is bound by the findings of the CJC board pursuant to *res judicata* or *collateral estoppel.* "Essentially, *res judicata* bars a court or administrative agency from reconsidering conclusions of law previously adjudicated while *collateral estoppel* bars relitigation of issues of fact previously adjudicated." [15]

i.e. willful or wanton misconduct, does not preclude the granting of benefits in this case. The conclusion of untruthfulness results from a judgment by a trail [sic] board. The Board does not find the claimant's apparent lack of memory to be willful or wanton misconduct.

\* \* \* \* \*

The decision of the Appeals Referee is affirmed. The claimant was discharged from his work without just cause in connection with his work. If otherwise qualified and eligible as determined by the Department of Labor, the claimant is entitled to receive unemployment benefits beginning with the week in which he first filed a valid claim.
*Id.* at 169.

9. *Moeller v. Wilmington Savings Fund Society,* 723 A.2d 1177, 1178 (Del.1999); *Avon Products, Inc. v. Wilson,* 513 A.2d 1315, 1317 (Del.1986).

10. *Avon Products, Inc.,* at 1317.

11. *Id.*

12. *Moeller,* 723 A.2d at 1178; *See also Del. Code Ann.* tit. 19, § 3315(2) (1995).

13. *Moeller,* 723 A.2d at 1178.

14. *Id.*

15. *Betts v. Townsends, Inc.,* 765 A.2d 531, 534 (Del.2000)

■ Under the doctrine of *res judicata* a party is foreclosed from bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties.[16] *Res judicata* has no application here because the prior proceeding was for disciplinary purposes; the subsequent proceeding was to determine eligibility for unemployment compensation benefits. They are different causes of action.

■ The City next argues issue preclusion or *collateral estoppel.* Where a court or administrative agency has decided an issue of fact necessary to its decision, the doctrine of *collateral estoppel* precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case.[17] The doctrine of *collateral estoppel* provides that, "where a question of fact essential to the judgment is litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action."[18]

■ In order to assert *collateral estoppel,* the following criteria must be present: (1) the issue previously decided is identical to the issue at bar; (2) the prior issue was finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[19] Collateral estoppel will not be applied if the precluded party did not have a full and fair opportunity to litigate the issue or if its application would cause an injustice to the precluded party.[20] Another exception is recognized if relitigation of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts.[21]

Assuming the disciplinary determination constitutes a finding on the issue of the intent of the claimant, the question is whether *collateral estoppel* is warranted. For the following reasons, I conclude that it is not. The statutory process provided by the Law Enforcement Officers' Bill of Rights is unique. It is an expedited procedure which permits rapid resolution of charges pending against a police officer.[22] Unlike administrative agencies whose decisions may preclude further litigation of an issue,[23] the members of the CJC board are not appointed by the Governor or confirmed by the Senate as is true of members of all other adjudicative boards or

16. *Id.*

17. *Id.*

18. *Columbia Casualty Co. v. Playtex FP, Inc.,* 584 A.2d 1214 (Del.1991).

19. *Betts,* 765 A.2d at 535.

20. *People v. Filitti,* 190 Ill.App.3d 884, 138 Ill.Dec. 87, 546 N.E.2d 1142, 1144 (1989).

21. *Id.,* (citing RESTATEMENT (SECOND) OF JUDGMENTS § 28(3) (1982)); *People v. Flynn,* 197 Ill.App.3d 13, 143 Ill.Dec. 733, 554 N.E.2d 668 (1990); *See also People v. Moore,* 138 Ill.2d 162, 149 Ill.Dec. 278, 561 N.E.2d 648 (1990).

22. Del.Code Ann. tit. 11, § 9204 (providing that a hearing must be scheduled no more than 30 days following the conclusion of the internal investigation).

23. *Acierno v. New Castle County,* 679 A.2d 455, 459 (Del.1996)(holding that decision of the Board of Adjustment which was not appealed precluded party from challenging the finality of the Board's decision in a later-filed action).

courts.[24] Adjudicative panels that are formed on an *ad hoc* basis, have only the collateral effect permitted by statute.[25] The Law Enforcement Officers' Bill of Rights does not speak to the issue of a collateral estoppel effect, and none will be presumed. The Board's decision not to give collateral estoppel effect to the prior ruling was correct as a matter of law.

### Conclusion

For the reasons above, the decision of the Unemployment Insurance Appeal Board is AFFIRMED.

IT IS SO ORDERED.

---

**24.** *See, e.g., Del.Code Ann.* tit. 7, § 6007 (creating an Environmental Appeals Board, to be appointed by the Governor "with the advice and consent of the Senate"); *Del.Code Ann.* tit. 7, § 7006 (creating a State Coastal Zone Industrial Control Board, whose members shall be appointed by the Governor and confirmed by the Senate); *Del.Code Ann.* tit. 19, § 2101 (creating an Industrial Accident Board, whose members shall be appointed by the Governor and confirmed by the Senate).

**25.** *Del.Code Ann.* tit.18, §§ 6805, 6812 (stating that Medical negligence review panels, *ad hoc* adjudicative boards created by *statute*, render decisions which "shall be admissible as prima facie evidence in the pending Superior Court action … but such opinion shall not be conclusive …"); DEL.SUPER. CT. CIV. R. 16.1(h)(3) (stating that arbitration decisions made pursuant to Super. Ct. Civ. R. 16.1 have no collateral estoppel effect in a trial de novo).