# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSEPH F. SPERA, D.M.D.,            )
                                     )
    Claimant Below-Appellant         )
                                     )
        v.                           )        C. A. No. N22A-08-001 FWW
                                     )
MID-ATLANTIC DENTAL                  )
SERVICE HOLDINGS,                    )
                                     )
    Employer Below-Appellee.         )

Submitted: February 27, 2023
Decided: April 20, 2023

## MEMORANDUM OPINION

*On Appeal from the Industrial Accident Board*
**AFFIRMED.**

William R. Peltz, Esquire, KIMMEL, CARTER, ROMAN, PELTZ & O'NEILL, Plaza 273, 56 West Main Street, 4th Floor, Christiana, Delaware 19702, Attorney for Claimant-Appellant, Joseph F. Spera, D.M.D.

Joseph Andrews, Esquire, LAW OFFICE OF JOSEPH ANDREWS, 737 South Queen Street, Suite 3, Dover, Delaware 19904, Attorney for Employer-Appellee, Mid-Atlantic Dental Service Holdings.

**WHARTON, J.**

# I.  INTRODUCTION

Joseph F. Spera, D.M.D. ("Dr. Spera") filed a Notice of Appeal on August 9, 2022, seeking a review of the Industrial Accident Board's ("IAB") July 13, 2022 decision.  In his Notice of Appeal, Dr. Spera contends that: (1) the IAB erred as a matter of law and fact when it found that his loss of earning capacity was not attributable to his workplace accident; (2) the IAB erred as a matter of law and fact when it found that he was not totally disabled between April 23, 2021 and May 3, 2021; and (3) the IAB's decision was not based on substantial evidence.  His former employer, Mid-Atlantic Dental Service Holdings ("Mid-Atlantic"), agrees that Dr. Spera made less money post-accident, but disputes that the reduction was due to the accident.  Instead, it attributes the reduction to, among other things, a voluntary career shift.  It also emphasizes that Dr. Spera failed to present any objective corollaries of his subjective complaints.  In short, it argues that IAB's determinations were predicated on substantial evidence and free of error and that its decision should be affirmed.

Upon consideration of the pleadings, the record below, and the deferential standard of review, the Court finds that the IAB's decision was supported by substantial evidence and free of error.  Therefore, its decision is **AFFIRMED**.

## II.    FACTS AND PROCEDURAL HISTORY

The IAB gave a thorough account of the facts, including Dr. Spera's treatment history.  It is unnecessary to list every doctor's visit, diagnosis, and treatment detail here.  Instead, the following summary of Dr. Spera's medical journey with a focus on those matters of direct import to this case suffices.  Unless otherwise indicated, the Court relies on the IAB's recitation of the facts.[1]

In October 2019, Dr. Spera, an oral and maxillofacial surgeon, sustained a compensable workplace injury while working at Mid-Atlantic.[2]  Shortly thereafter, he presented to his primary care doctor, Dr. Desanctis, complaining of neck pain, right hand numbness, right arm pain, and feeling like fingers were taped together.[3]  Dr. Desanctis ordered an MRI and referred Dr. Spera to neurosurgeon, Dr. Heller.[4]

Dr. Spera had an MRI done on October 31, 2019.[5]  After reviewing the MRI, Dr. Heller diagnosed Dr. Spera with cervical spondylosis, cervical radiculopathy, and right-hand weakness.[6]  He prescribed a Medrol Dosepak, physical therapy, and

---

[1] *Joseph Spera, D.M.D. v. Mid-Atlantic Dental Service Holdings*, IAB Hearing No. 1502573 (July 13, 2022), Ex., D.I. 1 (hereinafter "*Spera*, No. 1502573").
[2] He claims that he was moving specimens at which time "[h]e felt a pop and discomfort in his neck." *Spera*, No. 1502573 at 2-3.
[3] *Spera*, No. 1502573 at 3. Dr. Spera reports these symptoms, relatively consistently, throughout the record. *Id. passim.*
[4] *Spera*, No. 1502573 at 3.
[5] *Spera*, No. 1502573 at 9.
[6] *Spera*, No. 1502573 at 9.

possibly an injection.[7]  Importantly, Dr. Heller documented a positive Spurling's test (an objective sign) and was the only practitioner to do so.[8]

Dr. Ng, board-certified in anesthesia and pain management,[9] and another of Dr. Spera's treating doctors also reviewed the MRI.[10]  He "characterized the MRI findings as degenerative, unrelated to the work accident."[11]  He did opine that the workplace accident aggravated Dr. Spera's previously asymptomatic condition, however.[12]

Dr. Ng initially recommended conservative treatment, including therapy and nonsteroidal injections (Dr. Spera did at-home exercises).[13]  In response to Dr. Spera's report of worsening of symptoms, Dr. Ng began recommending epidural steroid injections and decompression.[14]

On October 19, 2020, Dr. Spera met with Dr. Albert, a neurosurgeon, to get a second opinion.[15]  Dr. Albert diagnosed Dr. Spera with cervical spondylosis, cervical

---

[7] *Spera*, No. 1502573 at 9.
[8] *Spera*, No. 1502573 at 21.
[9] Ng. Dep., April 25, 2022, IAB R. & Tr., Tab 14, D.I. 9 at 4:16–18 (hereinafter "Ng. Dep.")
[10] *Spera*, No. 1502573 at 9.
[11] *Spera*, No. 1502573 at 9.
[12] *Spera*, No. 1502573 at 9.
[13] *Spera*, No. 1502573 at 3.
[14] *Spera*, No. 1502573 at 10.
[15] *Spera*, No. 1502573 at 10.

stenosis, and cervical radiculopathy.[16] He ordered another MRI and recommended surgical intervention.[17]

Around this time, Dr. Spera "was placed on work restrictions of reduced hours, and no bending, lifting, or twisting."[18] His hours were ultimately halved and he performed fewer and less complex surgeries.[19] The combination of these changes decreased his earning potential.[20] Over the next year, Dr. Spera continued to see several doctors and reported occasional flare ups.[21] After complaining of severe pain, Dr. Spera was placed on 10 days of temporary total disability from April 23, 2021 to May 3, 2021.[22]

Dr. Spera remained employed by Mid-Atlantic through mid-May, 2021.[23] He tried several times to transition away from the practice, exchanging several communications with Mid-Atlantic's administration before leaving.[24] In these communications, Dr. Spera gave several administrative and financial reasons for his pending departure, for example staffing and management issues.[25]

---

[16] *Spera*, No. 1502573 at 10.
[17] *Spera*, No. 1502573 at 3; 10.
[18] *Spera*, No. 1502573 at 3.
[19] *Spera*, No. 1502573 at 3–4.
[20] *Spera*, No. 1502573 at 4.
[21] *Spera*, No. 1502573 at 10–11.
[22] *Spera*, No. 1502573 at 1; 11.
[23] Dr. Spera was employed at Mid-Atlantic from June 28, 2018 to May 13, 2021. *Spera*, No. 1502573 at 2.
[24] *Spera*, No. 1502573 at 4–6.
[25] *Spera*, No. 1502573 at 4–6.

Since transitioning away from Mid-Atlantic, Dr. Spera increased his time teaching at the University of Pennsylvania.[26]  He enjoyed teaching throughout his career and reported this role to be more positive for him due to the absence of staffing issues and the students assuming most of the responsibilities.[27]

On April 13, 2021, Dr. Spera filed his Petition to Determine Compensation Due, seeking ongoing temporary partial disability due to a continued reduction in earnings beginning on May 4, 2021.[28]  Based on his income of $16,120.19/week, Dr. Spera qualified for the maximum workers' compensation rate of $729.89/week.[29]

On June 16, 2022, the IAB held a hearing on Dr. Spera's case.[30]  The parties stipulated that "[t]he issue before the Industrial Accident Board is whether the industrial accident caused the claimant's reduction in earnings and earning power by restricting him from performing his duties as an Oral & Maxillofacial surgeon."[31]

---

[26] *Spera*, No. 1502573 at 6.
[27] *Spera*, No. 1502573 at 6–7.
[28] *Spera*, No. 1502573 at 2.
[29] *Spera*, No. 1502573 at 2.
[30] *Spera*, No. 1502573 at 2.
[31] Stip. of Facts, App'x. to Opening Br., ¶6, Ex. F., D.I. 14.  The parties also stipulated to Dr. Spera's reduction in earnings, obviating the need for testimony from his CPA. *Spera*, No. 1502573 at 2.

The IAB heard from Dr. Spera,[32] Dr. Ng,[33] and Dr. Piccioni[34] and were given an array of exhibits to consider.

Dr. Spera, testifying as an expert in oral and maxillofacial surgery, and Dr. Ng testified on Dr. Spera's behalf. Both explained the timeline of events that culminated with the case being brought before the IAB.[35] Dr. Ng, in pertinent part, concluded that while the MRI showed probable spinal degeneration, the workplace accident aggravated this previously asymptomatic condition.[36] He stated that Dr. Spera up to the time of Dr. Ng's deposition "was pretty much the same. He still has the same/similar symptoms, on the right hand. Weakness."[37] Dr. Ng also stated that Dr. Spera's positive Spurling test is an objective finding, consistent with his subjective complaints.[38]

In addition to discussing the nuances of his treatment and symptoms, Dr. Spera clarified other relevant issues. For example, he stated that issues from his injury "became compounded due to staffing issues[.]"[39] He also explained that he

---

[32] Hr'g Tr. June 16, 2022, IAB R. & Tr., Tab 2, D.I. 9 (hereinafter "Hr'g Tr.")
[33] Ng. Dep.
[34] Piccioni Dep. May 25, 2022, IAB R. & Tr., Tab 17, D.I. 9 (hereinafter "Piccioni Dep.").
[35] Ng. Dep. *passim*; Hr'g Tr. *passim*.
[36] Ng. Dep. 6:17–7:8.
[37] Ng Dep. at 20:10–11.
[38] Ng Dep. at 16:19–17:8.
[39] Hr'g Tr. at 23:11–24:8. *See also* Hr'g Tr. at 49:3–19 (clarifying the interplay between the administrative issues, his injury, and the loss of income).

7

would be capable of doing surgeries "[i]f the schedule is constructed properly and I have an adequate amount of time"[40] and clarified that even without the injury he would up his teaching hours.[41]  The core of Dr. Spera's argument is that his injury, and its associated consistent pain, made him unable to perform at his usual level, resulting in a reduction of his income.[42]

The IAB also heard from Mid-Atlantic's expert, Dr. Piccioni, a board-certified orthopedic surgeon.[43]  Dr. Piccioni explained that while Dr. Spera was not a malingerer,[44] after reviewing all medical records and meeting with Dr. Spera, he did not find any objective signs for any of the diagnoses given by Dr. Spera's treating doctors (segmental instability,[45] neurological deficit,[46] radiculopathy,[47] or myelopathy[48]).  He believes that, based on the symptoms and lack of objective corollaries, that the proper diagnosis is cervical radiculitis.[49]  Dr. Piccioni also agreed

---

[40] Hr'g Tr. at 45:7–10.
[41] Hr'g Tr. at 45:15–48:16.
[42] Pet. To Determine Compensation Due, IAB R. & Tr., Tab 1, D.I. 9 at ¶16; Hr'g Tr. at 50:12–16.
> Q: Is it still limited as we sit here today to perform longer and more extensive and complicated surgeries for the reasons you got (inaudible)
> A: It's, it's, it's limited to the degree where I can't do it.
[43] Piccioni Dep.
[44] Piccioni Dep. at 61:12–14.
[45] Piccioni Dep. at 12:24–13:4.
[46] Piccioni Dep. at 13:5–11.
[47] Piccioni Dep. at 17:3–15.
[48] *E.g.*, Piccioni Dep. at 25:17–22.
[49] Piccioni Dep. at 30:16–18; *Spera*, No. 1502573 at 12–13. "A radiculitis is non-verifiable radicular complaints. So you can have pain down the arm, you can have

with Dr. Ng that "[t]he only objective indication shown on diagnostic imaging were preexisting and degenerative[.]"[50] Dr. Piccioni stated that he could not comment on the appropriateness of Dr. Spera being taken off work from April 23 to May 3, 2021 as he did not examine him during that window.[51] His baseline opinion was that Dr. Spera "was capable of full-time, full-duty work"[52] without any restricted duties.[53]

On July 13, 2022, the IAB denied Dr. Spera's petition.[54] He filed this appeal on August 9, 2022.[55] The matter having been fully briefed, it is now ripe for decision.

### III. THE PARTIES' CONTENTIONS

The gravamen of Dr. Spera's argument is that the IAB "misconstrue[d] testimony and evidence and/or totally disregarded evidence to show otherwise."[56] He argues that the IAB's finding that his drop in income was due to a career shift is not supported by fact, law, or substantial evidence.[57] Dr. Spera argues the positive

---

sensory changes. They may have the feeling of weakness or a feeling of heaviness. And they're all subjective, but no objective findings in a dermatomal pattern." (Piccioni Dep. at 29:10–15)

[50] Piccioni Dep. at 14:6–11.

[51] Piccioni Dep. at 64:23–65:15; *Spera*, No. 1502573 at 19.

[52] Piccioni Dep. at 33:14–22.

[53] Piccioni Dep. at 33:23–34:1; *Spera*, No. 1502573 at 18 ("Dr. Piccioni was the only [doctor] who did not believe Claimant required work restrictions.")

[54] *Spera*, No. 1502573.

[55] D.I. 1.

[56] Opening Br. at 7, D.I. 13.

[57] Opening Br. at 26–33, D.I. 13. Dr. Spera also claims that a typographical error where the IAB concluded that it denied his petition "in part" and its admission of

9

Spurling's test and MRI results are objective markers and that these findings are consistent with his subjective complaints.[58] He also points to the consistency in diagnoses across practitioners[59] and emphasizes that patients would have been at risk had he returned to full surgical duty.[60] He also takes issue with how the IAB handled expert testimony; claiming that despite Dr. Spera being "the only expert qualified to testify as to the needs and requirements of such a surgeon … the IAB did not even note this in its decision."[61] Ultimately, he takes issue with the IAB siding with Dr. Piccioni, thereby "disregarding" all other practitioner's assertions and what he claims is evidence to the contrary.[62]

Mid-Atlantic counters that Dr. Spera's reduced income was the result of a combination of factors, none of which pertain to the injury.[63] It points to the effects

---

insurance evidence somehow justify reversal (Opening Br. at 34–35, D.I. 13). The Court finds these arguments unconvincing. There is a period after "denied" and all signs, including the content of the decision (e.g., "Therefore the Board denies the Claimants' petition *in its entirety* on page 24), point to this decision being a complete denial. The inclusion of "in part." was simply an error. The Court similarly finds that the IAB's handling of medical records and limited scope of considering the insurance was appropriate. The Court declines Dr. Spera's invitation to reverse on these grounds. *See* Ans. Br. at 24–26, D.I. 16

[58] Opening Br. at 11–12, D.I. 13.

[59] Opening Br. at 24, D.I. 13.

[60] Opening Br. at 21–22, 25, D.I. 13.

[61] Opening Br. at 13, D.I. 13.

[62] Opening Br. *passim*, D.I. 13; Reply Br. *passim*, D.I. 21.

[63] Ans. Br., D.I. 16.

of the pandemic,[64] Dr. Spera's own assertions that his departure was due to administrative and financial complaints,[65] and Dr. Spera's desire to focus on teaching rather than traditional practice.[66] At the same time, it emphasizes the lack of objective findings and the fact that it is only Dr. Spera's "self-interested testimony" (and self-diagnosis) that support his claim.[67] Finally, it claims that "[t]he IAB's acceptance of Dr. Piccioni's opinion over Dr. Ng's that Spera could work full time and full duty constitutes substantial evidence in and of itself."[68] For these reasons, it asks the Court to "deny the appeal and … affirm[] the IAB['s decision] in its entirety."[69]

## IV. STANDARD OF REVIEW

An IAB decision must be affirmed so long as "there is substantial evidence and no mistake of law."[70] A finding of substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[71]

---

[64] Ans. Br. at 13–14; 22, D.I. 16. Dr. Spera argues that "COVID's really a moot point at this point." Hr'g Tr. at 94:24.

[65] Ans. Br. at 11; 21–22, D.I. 16

[66] Ans. Br. at 14; 22, D.I. 16.

[67] Ans. Br. at 18–22, D.I. 16.

[68] Ans. Br. at 18, D.I. 16 (*citing Reese v. Home Budget Center*, 619 A.2d 907, 910 (Del. 1992)).

[69] Ans. Br. at 27, D.I. 16.

[70] *City of Newark v. Unemployment Ins. App. Bd.* 802 A.2d 318, 323 (Del. Super. Ct. 2002)(citations omitted).

[71] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019)(quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)).

11

Substantial evidence is "more than a mere scintilla but less than a preponderance of evidence."[72] This is a highly deferential standard; "[i]t is a low standard to affirm and a high standard to overturn."[73]

Questions of law are reviewed *de novo*.[74] The Court "[does] not weigh the evidence, determine questions of credibility, or make its own factual findings."[75] Instead, it must take "due account of the Board's experience and specialized competence and of the purposes of Delaware's worker's compensation statute"[76] and uphold its decision barring a finding that it "exceeds the bounds of reason given the circumstances, or where rules of law or practice have been ignored so as to produce injustice."[77]

## V. DISCUSSION

The IAB "found Dr. Piccioni's testimony [to be] very convincing, and Claimant's overall case [to be] weak."[78] At this juncture, the Court's role is not to

---

[72] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988)(citation omitted).

[73] *Hanson v. Delaware State Public Integrity Comm'n*, 2012 WL 3860732 * 7 (Del. Super. Ct. Aug. 30, 2012).

[74] *Kelley v. Perdue Farms*, 123 A.3d 150, 152–53 (Del. Super. 2015)(citations omitted).

[75] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019)(citations omitted).

[76] *Spellman v. Christiana Care Health Servs.*, 74 A.3d 619, 623 (Del. 2013)(citing 29 *Del. C.* § 10142(d)).

[77] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Dec. 21, 2005)(quoting *Bolden v. Kraft Foods*, 2005 WL 3526324, at *3 (Del. 2005). *See also* 29 *Del. C.* §10142(d).

[78] *Spera*, No. 1502573 at 21.

re-weigh the evidence, determine credibility, or even to decide whether the IAB reached the correct decision. Its role is to decide whether there was substantial evidence to support the IAB's decision and whether that decision was free from error. The Court notes that Dr. Piccioni's opinions on Dr. Spera's diagnoses and ability to work, all expressed to a reasonable degree of medical certainty, constitute substantial evidence such that a reasonable mind might accept it as adequate to support the IAB's decision. For the Court to find otherwise, it would need to step outside of its proper role and re-weigh the evidence and make independent credibility determinations and factual findings. The Court will not do so. The Court briefly addresses the core arguments in this case, however.

When it comes to the competing diagnoses, the IAB underscored that "[i]t is undisputed [that] the MRIs demonstrated preexisting findings[,]" accepted Dr. Piccioni's systematic dismissal of other practitioners' diagnoses,[79] and emphasized that Dr. Spera failed to present any objective signs that correlate with his subjective complaints.[80] These considerations form the basis for the IAB's finding that Dr. Spera failed to meet his burden to show that the work accident caused his loss of

---

[79] *Spera*, No. 1502573 at 21.
[80] *Spera*, No. 1502573 at 21–24.

earnings/earning potential and constitute substantial grounds for denying his petition for total disability.[81]

The IAB also contextualized Dr. Spera's reduction in income and departure from Mid-Atlantic, explaining its denial of the Petition in its entirety.[82] It notes Dr. Piccioni's claim that Dr. Spera could have made adjustments such as altering the surgical table's height that would have allowed him to perform surgeries, that "such adjustments are commonly done and would not limit the ability to perform surgery."[83] Also, based on Dr. Spera's testimony and the communications addressing his looming departure from the practice, the IAB concluded that his loss in income is attributable to a voluntary career-shift,[84] to pandemic-specific reduction in surgeries,[85] and to administrative complaints,[86] not to the workplace injury.[87] It further emphasized that if Dr. Spera had injury-specific reasons for leaving that he would have disclosed them to his employer.[88]

---

[81] *See Spera*, No. 1502573 at 24. It is immaterial that all other doctors placed Dr. Spera on restrictions. The IAB deemed Dr. Piccioni to be more credible than the other practitioners and the Court finds no reason to disrupt this determination. This is simply not the Court's role.

[82] *Spera*, No. 1502573 at 22–25.

[83] *Spera*, No. 1502573 at 22.

[84] *Spera*, No. 1502573 at 22.

[85] *Spera*, No. 1502573 at 22–23.

[86] *Spera*, No. 1502573 at 23.

[87] *Spera*, No. 1502573 at 24.

[88] "During his testimony, Claimant did not present as someone who would be silent with Employer of injury-related reasons for wanting to leave his employment at Employer." *Spera*, No. 1502573 at 24.

To the extent that commentary is necessary, the Court is unpersuaded by Dr. Spera's arguments concerning Dr. Piccioni's competence to give his expert opinion in this case.[89]  Practitioners do not need to be specialists in the area(s) at issue to provide expert opinion.[90]  Dr. Piccioni is a board-certified orthopedic surgeon with 30 years of experience who evaluated Dr. Spera twice and reviewed Dr. Spera's medical records.[91]  In considering the full record before it, the Court cannot find that Mid-Atlantic's reliance on Dr. Piccioni is "throwing a bunch of [garbage] against the wall to confuse the issue and hoping something may stick."[92]  The Court finds that it was entirely within the IAB's fact-finding function to adopt Dr. Piccioni's opinions over those of the other practitioners.

## VI.    CONCLUSION

**THEREFORE,** the decision of the Industrial Accident Board is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[89] *See* Opening Br. at 13–14, D.I. 13.
[90] *Delmarva Power & Light v. Stout,* 380 A.2d 1365, 1369 (Del. 1977); *Board of Public Education in Wilmington v. Rimlinger,* 232 A.2d 98, 100 (Del. 1967); *Drucker v. Philadelphia Dairy Products Co., Inc.,* 166 A. 796, 798 (Del. Super. Ct. 1933).
[91] Piccioni Dep.
[92] Reply Br. at 7, D.I. 21. *See* Opening Br. at 3–7, D.I. 13.