**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| DIAMOND TOWN TIRE PROS & AUTO CARE, LLC and NUCAR MIDDLETOWN, LLC, | ) ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | C.A. No. N22A-05-010 PRW |
| DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, | ) ) ) ) ) | |
| Appellee. | ) | |

Submitted: May 26, 2023
Decided: June 9, 2023
Written Decision Withdrawn, Corrected, and Reissued: June 12, 2023

## <u>ORDER</u>

*Upon Diamond Town Tire Pros & Auto Care, LLC and Nucar Middletown, LLC's Appeal of the Final Order and Decision of the Environmental Appeals Board,*
**AFFIRMED.**

This 12th day of June 2023, upon the parties' briefs and submissions and the record below, it appears to the Court that:

(1)    Appellants Diamond Town Tire Pros & Auto Care and NUCAR Middletown, LLC (collectively, "Diamond Town") have taken an appeal from an Environmental Appeals Board ("EAB") decision and final order.[1]

(2)    Before engaging on the substance of Diamond Town's appeal,

---

[1]    D.I. 1, Ex. A ("EAB Decision and Final Order").

Appellee Delaware Department of Natural Resources and Environmental Control ("DNREC") moved to dismiss it insisting this Court lacked jurisdiction because the appeal was untimely. The Court denied DNREC's motion.[2]

(3) In this appeal, Diamond Town argues the EAB's decision wasn't supported by substantial evidence because DNREC's investigator failed to conduct a proper investigation.[3] Specifically, Diamond Town says the purported fact that a mix of tires—some scrap, some not—were stored together in a pile does not perforce render it a scrap-tire pile.[4] Diamond Town insists that by failing to quantify the amount and failing to sort the type of tires in the pile, the DNREC investigator failed to conduct an adequate investigation—thus, improperly conflating used tires with scrap tires.[5]

(4) According to DNREC, its investigation sufficed, the EAB's decision

---

[2] *Diamond Town Tire Pros & Auto Care, LLC v. Del. Dep't of Natural Resources and Env't Control*, 2023 WL 2985256, at *4 (Del. Super. Ct. Apr. 17, 2023).

[3] Opening Br. at 6 (D.I. 12) ("The uncontroverted evidence was that DNREC never determined the *actual number* of used tires that Diamond Town had set aside in its tire pile to be removed by its used tire hauler that actually met the definition of a scrap tire." (emphasis added)).

[4] Reply Br. at 3 (D.I. 25)

> A used tire that is prudent or practical for vehicular use is not a scrap tire merely because it is stored in a tire pile with tires that do meet the definition of a scrap tire. A used tire that is prudent or practical for vehicular use is not a scrap tire merely because the facility that is storing the tires does not sell used tires to the public. A used tire that is prudent or practical for vehicular use is not a scrap tire merely because the owner or operator of the facility does not barrel stack the tires.

[5] *Id.* at 6.

was supported by substantial evidence, and the Court should affirm that decision.[6]

(5)     In May 2019, a DNREC investigator inspected Diamond Town's facility where she found a large tire pile.[7]  Because Diamond Town's manager identified it as the business's scrap-tire pile, because the tires were stored outside, and because the tires were thrown together in a pile, the investigator concluded the pile was indeed a scrap-tire pile.[8]  After counting more than 100 tires in the pile, the investigator determined that Diamond Town was a scrap-tire facility and issued a notice of violation for failure to comply with the appropriate regulations governing scrap-tire facilities.[9]   Three months later, a DNREC investigator returned and again observed over 100 scrap tires.[10]  Then more than a year after the second inspection, a DNREC investigator returned for another follow-up inspection.[11]  At the third inspection, the investigator observed, again, a similar tire pile with over 100 scrap tires.[12]  And because Diamond Town had failed to comply with the regulations governing scrap-tire facilities, DNREC issued the Order of

---

[6]     Answering Br. at 9-12 (D.I. 23).

[7]     D.I. 7, Ex. 11 (Feb. 22, 2022 EAB Hr'g Tr.) at 49-50.

[8]     *Id.* at 49-53.

[9]     *Id.* at 53-54.

[10]    *Id.* at 54-55; D.I. 7, Ex. 10 ("Chronology") at 33 (stating the investigator "observed over 100 scrap tires" at the August 2019 follow-up inspection).

[11]    EAB Hr'g Tr. at 56.

[12]    *Id.*   Before DNREC conducted the third inspection, Diamond Town confirmed in its 2019 Scrap Tire Annual Report that there were 100 scrap tires then on the property and that Diamond Town generated 1,288 scrap tires that year. *Id.* at 36.

the Secretary[13] that is the subject of the EAB's decision and the present appeal.[14]

(6)    On March 25, 2022, the EAB issued its Final Order and Decision.[15] That decision concluded Diamond Town's "tire pile constitute[d] a scrap tire facility as that term is used in the regulations."[16] The EAB heard testimony from two witnesses—a DNREC investigator and Diamond Town owner James Barnes—and examined the evidence provided by the parties.[17]

(7)    The EAB decided 6-0 to affirm the Secretary's Order.[18] But, even upon doing so, it admonished both parties.

(8)    The EAB admonished DNREC for the "presumptuous and seemingly casual way in which DNREC made its calculations regarding the number of scrap tires in the pile at the time of its inspections."[19]

(9)    The EAB admonished Diamond Town for its failure to "physically

---

[13]    *Id.* at 57; D.I. 7, Ex. 10 at 85-98 (June 3, 2021 Notice of Administrative Penalty Assessment and Secretary's Order) (finding that Diamond Town was a scrap-tire facility as defined in 7 *Del. Admin. C.* § 1301-3.0 that had not complied with applicable scrap-tire facility regulations).

[14]    EAB Decision and Final Order.

[15]    *Id.*

[16]    *Id.* at 9.

[17]    *Id.* at 4-8.

[18]    *Id.* at 9.

[19]    *Id.* ("[T]he Board would like to make it clear that it was uneasy with the presumptuous and seemingly casual way in which DNREC made its calculations regarding the number of scrap tires in the pile at the time of its inspections. In light of the fact that the number of 'scrap' tires in a pile is determinative of whether the pile will be judged a scrap tire facility the Board encourages DNREC to explore alternative methods for making that crucial finding.").

separate scrap tires from used tires" and its failure to keep proper records.[20]

(10)    The EAB concluded that, given its standard and scope of review, it was "unable to conclude as a matter of fact that 'the Secretary's decision is not supported by the evidence on the record before the Board.'"[21]  And, therefore, the EAB affirmed the decision of the DNREC Secretary.[22]

(11)    When reviewing decisions of the EAB, this Court must decide "whether the decision is supported by substantial evidence and is free from legal error."[23]  Substantial evidence, in this respect, means evidence "which a reasonable mind might accept as adequate to support a conclusion."[24]  "It is more than a 'mere scintilla but less than a preponderance of the evidence.'"[25]

(12)    Reviewing the EAB's decision, the parties' briefs, and the record

---

[20]    *Id.* ("The Board believes that better record keeping practices and physical separation of the scrap tires and used tires on the part of Diamond could have established the missing evidence to support its theory of the case.").

[21]    *Id.* (quoting DEL. CODE ANN. tit. 7, § 6008(b) (2021)).

[22]    *Id.*

[23]    *Keep Our Wells Clean v. State of Del. Dep't of Nat. Res. & Env't Control*, 243 A.3d 441, 446 (Del. 2020) (citing *State of Del. Dep't of Nat. Res. & Env't Control v. McGinnis Auto & Mobile Home Salvage*, 225 A.3d 1251, 1254 (Del. 2020)); DEL. CODE. ANN. tit. 29, § 10142(d) (2021) ("The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. The Court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency.").

[24]    *Keep Our Wells Clean*, 243 A.3d at 446 (quoting *Prunckun v. Del. Dep't of Health & Soc. Servs.*, 201 A.3d 525, 540 (Del. 2019)).

[25]    *Id.* (quoting *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019)).

below, the Court finds there was substantial evidence on which the EAB could affirm the Secretary's decision.

(13)  DNREC's investigator issued Diamond Town a notice of violation because of its tire pile, which the investigator determined constituted a scrap-tire pile.[26]  More than a year later when DNREC conducted a subsequent investigation, there was still a large tire pile present.[27]  Diamond Town acknowledged the notice of violation it received but didn't change its practices and continued to "not keep a count of the number of tires in the [tire] pile at any given time."[28]

(14)  Diamond Town failed to meaningfully comply with the 2019 notice of violation it received.[29]  And when it filed its 2019 scrap-tire facility report, as instructed by DNREC, it said it "conducted no investigation at that time to determine whether it should be considered a scrap tire facility and did not look at the regulations."[30]

(15)  Given the DNREC investigator's observations and Diamond Town's

---

[26]  EAB Decision and Final Order at 7 (noting at that inspection, Diamond Town's facility manager "showed [the DNREC investigator] to what he called the scrap tire pile" and the investigator did not investigate further to determine "if any of the tires in the pile were in a usable condition especially since [the facility manager] had referred to the pile as a 'scrap tire pile.'" (citing EAB Hr'g Tr. at 50)); *id.* (explaining the investigator's method of counting and/or approximating the quality of tires).

[27]  *Id.* at 8 (explaining the findings at the follow-up inspection conducted in December 2020).

[28]  *Id.* at 6 (citing EAB Hr'g Tr. at 42).

[29]  *See id.* at 5-6.

[30]  *Id.* at 5 (citing EAB Hr'g Tr. at 31).

inability to refute those observations because of its own poor practices and record keeping, the EAB had substantial evidence to find in favor of DNREC and affirm the Secretary's decision.

(16) Nowhere in its appeal has Diamond Town suggested the EAB's decision was the result of any mistake of law. And so, the EAB's decision must be presumed free of legal error. Accordingly, that decision must be affirmed.[31]

**NOW THEREFORE**, **IT IS ORDERED** that the Environmental Appeals Board's judgment affirming Order No. 2021-WH-0015 of the Secretary of the Department of Natural Resources and Environmental Control is **AFFIRMED.**

IT IS SO ORDERED.

_____
Paul R. Wallace, Judge

---

[31] *See Zayas v. State*, 273 A.3d 776, 785 (Del. 2022) ("If there is no error of law and substantial evidence supports the Board's findings, the Board's decision must be affirmed." (cleaned up)); *Del. Inst. of Health Sciences, Inc. v. Del. State Bd. of Nursing*, 2011 WL 3247798, at *2 (Del. Super. Ct. July 29, 2011) ("An administrative board's final decision should be affirmed as long as there is substantial evidence to support the board's decision and the ruling is free from legal error." (citation omitted)); *City of Newark v. Unemployment Ins. Appeal Bd.*, 802 A.2d 318, 323 (Del. Super. Ct. 2002) ("If there is substantial evidence and no mistake of law, the Board's decision must be affirmed." (citation omitted)).