**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

CONSTANCE GARY,⁣ )
)
   Appellant,⁣ )
)
   v.⁣ ) C.A. No. N24A-04-006 CEB
)
WAUSAU FINANCIAL SYSTEMS )
INC./DELUXE CORP. & )
UNEMPLOYMENT INSURANCE )
APPEALS BOARD, )
)
   Appellees.⁣ )

Submitted: September 6, 2024
Decided: November 7, 2024

## ORDER

This is an appeal from a decision by the Delaware Unemployment Insurance Appeals Board ("DUIAB") affirming a finding by the Appeals Referee that Claimant Constance Gary ("Claimant") voluntarily resigned from her employment from Deluxe Corp. ("Deluxe") and was not entitled to receive unemployment benefits. While the DUIAB has made the case somewhat more interesting than it needed to be, the Court will affirm its decisions as they are based on substantial evidence and free from legal error.[1]

---

[1] "If there is substantial evidence and no legal error, the Board's decision will be affirmed." *Atlantis Commc'ns v. Webb*, 2004 WL 1284213, at *2 (Del. Super. May 28, 2004) (citing *City of Newark v. Unemployment Insurance Appeal Board,* 802 A.2d 318, 323 (Del. Super. 2002).

## BACKGROUND

**1. Claimant and Deluxe negotiated a settlement agreement.**

Claimant worked for a predecessor company to Deluxe for many years. Deluxe was her employer at the time of the actions giving rise to the claim. In 2020, Claimant filed a *pro se* civil complaint in federal district court against Deluxe, alleging a virtual smorgasbord of discrimination claims involving her workplace.[2] On the company's motion to dismiss that complaint, many claims were dismissed, but a few survived the motion.[3] Thereafter, the parties began attempting to settle the dispute, all while Claimant continued her employment with the Deluxe.

Eventually, as in all settlements, each side gave something and got something. The final terms included dismissal of the federal lawsuit, approximately a year's salary for Claimant, Claimant's voluntary separation from employment with Deluxe, cancellation of owed paid time off, and letter of reference from Claimant's supervisor.[4] That agreement was fully executed as of June 20, 2023.[5]

---

[2] In federal district court, Claimant asserted the following causes of action against Deluxe.: 1) retaliatory hostile work environment and retaliation; 2) defamation/defamation *per se* (slander); 3) tortious interference with contract/breach of contract; 4) breach of the covenant of good faith and fair dealing; 5) breach of fiduciary duty; and 6) intentional infliction of emotional distress. *Gary v. Deluxe Corp.*, 2022 WL 2817864, at *1 (D. Del. July 19, 2022).

[3] The federal district court dismissed all of Claimant's causes of action for 1) contract; 2) breach of fiduciary; and 3) intentional infliction of emotional distress claims. *Id.* at *5.

[4] D.I. 43 (Ex. A. Full Certified R.), Trans. ID 73632889 (July 11, 2024) at 35, 104 [hereinafter R. at page number].

[5] R. at 84, 106.

2

Inexplicably, the day after signing the settlement agreement, Claimant wrote to her supervisor and claimed that she had been constructively discharged from Deluxe due to the company's illegal discrimination against her.[6] Then she applied for unemployment benefits.[7]

**2. The Appeals Referee ruled Claimant is ineligible for unemployment compensation, and the DUIAB affirmed the Appeals Referee.**

Deluxe objected to the payment of unemployment compensation. At the initial hearing, Claimant argued that she was "coerced" into signing the settlement agreement and it was therefore a nullity.[8] She did not, however, elucidate exactly what this alleged coercion entailed.[9] An attorney for Deluxe testified at the hearing that Claimant's settlement demands had run the gamut from $150,000 to $2 million and a letter of recommendation.[10] With respect to Claimant's allegation of coercion, the attorney testified that Claimant was repeatedly told that she was free to keep working there and not accept the $57,000 payment included in the

---

[6] R. at 106-07.

[7] R. at 37.

[8] R. at 99.

[9] R. at 99 (After testifying about the alleged coercion, Appeals Referee Kathryn M. Gantz asked Claimant the following: "Anything else you want to tell me?" In response, Claimant said, "No, that's all.").

[10] R. at 103.

3

settlement agreement.[11]  The Appeals Referee told Claimant "if you have any evidence of duress or coercion . . . you can present it."[12]  Claimant responded that she made demands for more money that Deluxe would not give her.[13]

The Appeals Referee refused to countenance Claimant's arguments of duress or coercion and found that the settlement agreement, which included a provision reciting her voluntary termination, effectively answered the question whether her termination from employment was voluntary.[14]  Claimant appealed to the DUIAB, which held its own hearing and came to the same conclusion.[15]  Claimant then filed this appeal in Superior Court.

---

[11] R. at 108. This testimony was not directly contradicted by Claimant.

[12] R. at 111-12.

[13] At the hearing before the Appeals Referee, Claimant testified, "There's evidence in the -- in -- that I could submit into the record that shows that I demanded increased payments prior to even signing that agreement. There's evidence that they rejected increased payments." R. at 113.

[14] The Appeals Referee made the following findings: "Here, the tribunal finds that Claimant voluntarily quit her employment when she signed the SAR [Settlement Agreement and Release] thereby indicating her agreement. The tribunal finds the Claimant's assertion that she did so under duress simply not credible. The tribunal notes that the SAR provides the Claimant with a 21 day right of review and a 5 day right to revoke, Clearly the Claimant left her employment as a result of a cash payout and other considerations provided for in the SAR." R. at 76.

[15] "The Board **AFFIRMS** the Referee's Decision. For the reasons stated above, the Board finds that Claimant had voluntarily left her employment without good cause connected to her work. Accordingly, Claimant is **DISQUALIFIED** from receiving unemployment benefits." R. at 22 (emphasis original).

### 3. Claimant appealed, with a contested record, to the Superior Court.

As a matter of course, the DUIAB was served with notice of the appeal and directed to forward the record to the Court within twenty days. Twenty days came and went, the record did not. The Court corresponded with the DUIAB concerning what happened to the record, and the DUIAB responded that the record was submitted to the Court, but at that time there was no record of receipt in the Prothonotary. Eventually, the DUIAB attached a copy of the record to a letter to the Court.

The above is only significant because Claimant, *pro se*, argues that she proffered materials to the DUIAB that are not in the DUIAB record. The transcripts lend some support for the proposition that she had some papers at the hearing(s) that were not incorporated into the DUIAB's record. This gives rise to the question: whose problem is that? When evidence is rejected that a party wishes to place in the record, the proper procedure would be to offer the evidence as an exhibit to be included in the record so that a reviewing body can consider the arguments concerning the proffered evidence.[16] The Claimant, as the party arguing that the

---

[16] *Tatten Partners, L.P. v. New Castle Cnty. Bd. of Assessment Rev.*, 1993 WL 1626511, at *10 (Del. Super. Sept. 9, 1993) ("this Court considers the record below, supplemented by any other pertinent evidence offered by the parties."); *see also Schafer v. Kent Cnty. Dep't of Plan. Servs.*, 2023 WL 3750390, at *9 n.74 (Del. Super. May 31, 2023) (observing that in an administrative appeal the Court may "consider[] supplemental information not typically included within the record below."); *Phillips v. Delaware Dep't of Servs. for Child. Youth & Their Fams.*, 2022 WL 811177, at *2 (Del. Super. Mar. 15, 2022) (quoting *Jackson v. Unemployment Ins. Appeal Bd.*, 1986 WL 11546, at *2 (Del. Super. Sept. 24, 1986)) ("In administrative appeals cases, this Court

settlement agreement was procured through duress, bore the burden of proving duress.[17] She offered nothing to the Appeals Referee. It appears she may have brought some papers to the Board hearing, but the Board did not accept them into evidence.[18] She made no effort to ensure that whatever evidence she offered was preserved for the record. Her failure to do so made appellate review of her claim more difficult.

The Court called the matter for argument to discuss the difficulties with the record and try to avoid a remand for the sole purpose of completing the record. The Court was also sensitive to Claimant's *pro se* status and wished to give her a "day in court." But instead of appearing to state her case, Claimant advised that she may be starting a new job soon and would be unavailable to attend. So the Court invited her to place whatever she wanted considered on the docket. She has done so. Which is to say, she has filed some papers. But none of them show coercion or duress in the negotiation of the settlement agreement or for voluntary resignation.

---

has recognized that it may 'exhibit some degree of leniency toward a pro se litigant to see his case is fully and fairly heard.'").

[17] The "burden of proving eligibility for benefits is upon the claimant, not the employer." *Middlebrooks v. Stevedores*, 1995 WL 465317, at *2 (Del. Super. Aug. 4, 1995) (citing *Petty v. Univ. of Delaware*, 450 A.2d 392, 395 (Del. Super. 1992)). Where the "claimant contends that his resignation was compelled, or a product of adverse circumstances, he must bear the burden of proving so." *Ridings v. Unemployment Ins. Appeal Bd.*, 407 A.2d 238, 239 (Del. Super. 1979).

[18] R. at 54-59.

For example, Claimant submitted one of the red-lined, draft versions of the settlement agreement of the district court lawsuit.[19] Apparently the parties agreed to call her departure from Deluxe her "Separation Date." One redline strike-out referred to her "termination" of employment instead of her "separation."[20] She claims that this reference to "termination" was a threat that if she did not sign the settlement agreement she would be terminated. In context, that is simply fanciful.

In an email dated in the week before the settlement was signed, Claimant said "I intend to file yet another charge against Deluxe within this case for retaliation, because the word termination should never have appeared in the agreement as a coercive method to get me to sign an agreement waiving my right to file claims and receive money for a constructive discharge."[21] In this same email, Claimant demanded $107,000 in return for her resignation. And then she threatened: "If Deluxe wants to avoid another charge of retaliation for threatening termination within the settlement agreement just sent to me during negotiations that have gone on for months, Deluxe will concede to the $107K demand."[22] It would seem the "duress" went both ways. It is sufficient to say each side got a benefit: Claimant a

---

[19] D.I. 76 (Settlement Agreement and Release), Trans. ID 74248758 (Sept. 6, 2024).

[20] *Id.* at 3.

[21] D.I. 19 (Ex. H.), Trans. ID 73348068 (June 10, 2024) at 6.

[22] *Id.*

7

substantial check and a letter of recommendation, Deluxe, a dismissal of the lawsuit and a voluntary termination of employment.

## STANDARD OF REVIEW

On appeals from the DUIAB, the "Court's review of the Board's decision is limited to whether there was substantial evidence to support the Board's findings, and whether they are free from legal error."[23] The substantial evidence standard is defined as "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[24] The DUIAB determines "the credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board to determine."[25] The Court views the "record in the light most favorable to the prevailing party before the Board."[26]

If the Board's decision is supported by substantial evidence, then the Court's review is limited to questions of law.[27] The Court reviews the Board's legal decisions

---

[23] *Richardson v. Unemployment Ins. Appeal Bd.*, 2024 WL 3582471, at *2 (Del. Super. July 30, 2024) (citing *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778,781-82 (Del. 2001)) (footnote omitted).

[24] *Atlantis Commc'ns v. Webb*, 2004 WL 1284213, at *2 (Del. Super. May 28, 2004) (quoting *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.,* 636 A.2d 893, 899 (Del. 1994)) (footnote omitted).

[25] *Coleman v. Dep't of Lab.*, 288 A.2d 285, 287 (Del. Super. 1972).

[26] *Haggerty v. Bd. of Pension Trustees of State*, 2012 WL 3029580, at *3 (Del. Super. July 20, 2012) (citing *Thompson v. Unemployment Ins. Appeal Bd.,* 25 A.3d 778, 782 (Del. 2011)).

[27] *Carousel Studio v. Unemployment Ins. Appeal Bd.*, 1990 WL 91108, at *3 (Del. Super. June 26, 1990) (citing 19 *Del. C.* § 3323(a)).

*de novo.*[28] The Court will affirm the DUIAB's decision, except where the DUIAB commits an abuse of discretion.[29]

## DISCUSSION

Contracts made under duress are voidable at the option of the victim.[30] But the "victim" is also free to ratify the contract if, for example, (s)he "accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity if afforded to annul or void it."[31] "It is axiomatic that a party cannot both accept the benefits which accrue under a contract on the one hand and shirk its disadvantages on the other." [32]

---

[28] *Carey v. Unemployment Ins. Appeal Bd.*, 2014 WL 3049437, at *1 (Del. Super. June 5, 2014) (citing *Miller v. Garda CL Atl., Inc.*, 2011 WL 1344900, at *1 (Del. Super. Apr. 7, 2011).

[29] *Tuttle v. Mellon Bank of Delaware*, 659 A.2d 786, 788 (Del. Super. 1995) (citing *Stoltz Management Co., Inc. v. Consumer Affairs Board,* 616 A.2d 1205, 1208 (Del. Super. 1992)).

[30] "[A] contract agreed to under duress (or by reason of undue influence) is voidable at the option of the victim." *Rudnitsky v. Rudnitsky*, 2001 WL 1671149, at *6 (Del. Ch. Dec. 20, 2001); *see also Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 738 (D. Del. 1991), *aff'd*, 988 F.2d 414 (3d Cir. 1993) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 175(1) (AM. L. INST. 1981)) ("[A] contract is voidable '[i]f a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative.'").

[31] *Cianci v. JEM Enter., Inc.*, 2000 WL 1234647, at *12 (Del. Ch. Aug. 22, 2000) (quoting *Gallon v. Lloyd-Thomas Co.*, 264 F.2d 821, 826 (8th Cir. 1959)) (footnotes omitted).

[32] *Standard Gen. L.P. v. Charney*, 2017 WL 6498063, at *17 (Del. Ch. Dec. 19, 2017), *j. entered*, (Del. Ch. 2018), and *aff'd*, 195 A.3d 16 (Del. 2018) (quoting *Graham v. State Farm Mut. Auto. Ins. Co.*, 1989 WL 12233, at *2 (Del. Super. Jan. 26, 1989), *aff'd*, 565 A.2d 908 (Del. 1989)).

So, while the record from the DUIAB is somewhat muddled,[33] it is abundantly clear that Claimant accepted the benefits of the settlement agreement, to wit, a $58,000 check, a letter of reference, and other benefits. She has not returned them. She cannot simultaneously claim that she signed the settlement agreement under duress and can therefore ignore the voluntary resignation and releases she executed in return for the money.

The Court concludes DUIAB's decision that Claimant 1) voluntarily left her employment without good cause and 2) is ineligible for unemployment benefits is supported by substantial evidence and free from legal error and it is therefore **AFFIRMED**.

**IT IS SO ORDERED**.

*/s/ Charles E. Butler*
Charles E. Butler, Resident Judge

---

[33] It would have been neater if the Board had kept Claimant's documents that the Board rejected as irrelevant so that their relevance could be reviewed on appeal. Claimant did not request the Board's retention of the documents and to that extent, she waived any complaint on appeal. These errors notwithstanding, the Court did consider her documentary evidence and, like the Board, finds it irrelevant – or at least thoroughly unconvincing – on the question of duress or coercion.