**Frank E. ACIERNO, Defendant Below, Appellant,**

v.

**NEW CASTLE COUNTY, Plaintiff Below, Appellee.**

No. 458, 1995.

Supreme Court of Delaware.

Submitted: April 30, 1996.
Decided: July 25, 1996.

Charles M. Oberly, III, and Kathleen Jennings of Oberly, Jennings & Drexler, Wilmington, for Appellant.

Collins J. Seitz, Jr. of Connolly, Bove, Lodge & Hutz, Wilmington, for Appellee.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

BERGER, Justice:

This appeal concerns one phase of the lengthy dispute between Frank Acierno ("Acierno") and New Castle County (the "County") over Acierno's efforts to develop a 40 acre parcel of land located near the intersection of Interstate Highway 95 and Route 273, in New Castle County (the "273 property"). In 1993, after Acierno was denied a building permit, he filed an injunctive action in the United States District Court for the District of Delaware, claiming violations of his constitutional rights. At the same time, the County filed an action in the Court of Chancery, seeking a declaratory judgment that Acierno was not entitled to proceed with his commercial development plans. Acierno moved to stay or dismiss the state action, and the County moved for summary judgment. The Court of Chancery denied Acierno's motion to stay or dismiss and granted the County's motion for summary judgment.

Acierno appeals both rulings. We hold that the trial court acted within its discretion in refusing to stay or dismiss the state action in favor of the federal action. We also hold that the trial court was correct in ruling that

the decision denying Acierno's building permit became final when Acierno failed to appeal to the Superior Court.

## I.  FACTUAL BACKGROUND

The history of Acierno's struggle to obtain County approval of his commercial development plans has been described in some detail in several decisions of the state and federal courts. *See, e.g. Acierno v. Folsom,* Del.Ch., 313 A.2d 904, *aff'd.,* Del.Supr., 311 A.2d 512 (1973); *Acierno v. Folsom,* Del.Supr., 337 A.2d 309 (1975); *Acierno v. Mitchell,* D.Del., C.A. No. 92–384–SLR, Robinson, J., 1992 WL 694590 (Dec. 30, 1992), *rev'd.,* 3d Cir., 6 F.3d 970 (1993); *Acierno v. New Castle County,* D.Del., C.A. No. 93–579–SLR, Robinson, J., 1994 WL 720273 (Feb. 11, 1994), *rev'd.,* 3d Cir., 40 F.3d 645 (1994). We summarize here only those facts necessary to an understanding of the issues presented to this Court.

In 1971, the 273 property consisted of two tracts. Acierno held a long-term lease on the larger tract (approximately 38 acres), which was zoned M–1 (manufacturing), and he owned the smaller tract, which was zoned C–2 (commercial). In May 1971, Acierno filed an exploratory sketch plan for the construction of a shopping center on the 273 property. At that time, commercial uses were permitted in both M–1 and C–2 zoning classifications. In November 1971, Acierno's preliminary tentative plan for the shopping center was approved by the County Planning Board. However, the County thereafter amended the zoning code to delete commercial uses as permitted uses in an M–1 zone. As a result, when Acierno submitted his final plan early in 1972, it was rejected by the County Planning Department and, ultimately, by the County Council. Acierno spent the next three years litigating in the state courts and, after a favorable ruling from this Court in March 1975, the County approved Acierno's plan for a shopping mall on the 273 property.

The record does not reflect any activity relating to the 273 property for the next ten years. In the mid–1980s, Acierno purchased the 38 acre parcel that he had been leasing. In 1987, he submitted a record resubdivision plan for the 273 property to the County Planning Department. After some revisions, the plan was approved in 1989. In December 1991, Acierno applied for a building permit to construct a retail store on the 273 property. The original application called for a larger structure than had been approved in the resubdivision plan, and Acierno submitted a revised application in May 1992. That application was denied in June 1992 because, although the structure size now was in compliance with the recorded plan, the proposed commercial use was not permitted in an M–1 zone.

Acierno filed suit in the United States District Court for the District of Delaware on July 1, 1992. He alleged, among other things, that the County's denial of a building permit violated his constitutional rights to procedural and substantive due process and equal protection of the laws. The District Court entered a preliminary injunction ordering the County to issue a building permit. However, the federal appellate court vacated that order, finding that Acierno's claim was premature, as he had not appealed to the County Board of Adjustment before filing suit. *See Acierno v. Mitchell,* 3d Cir., 6 F.3d 970 (1993).

The first federal action was dismissed without prejudice and Acierno filed his appeal with the Board of Adjustment, as instructed. On December 16, 1993, the Board of Adjustment orally affirmed the decision of the Department of Public Works denying the building permit. The next morning, the County filed the Court of Chancery declaratory judgment action that is the subject of this appeal. A few minutes later, Acierno filed his second federal action, again seeking injunctive relief for alleged constitutional violations.

In January 1994, Acierno filed a motion to dismiss or stay the state action and the County filed a motion for summary judgment. While those motions were being briefed and considered by the Court of Chancery, the federal action was proceeding. The District Court entered a second preliminary injunction, ordering the County to issue Acierno a building permit. The federal ap-

pellate court again vacated the order, this time on the ground that Acierno failed to establish immediate irreparable harm. *See Acierno v. New Castle County,* 3d Cir., 40 F.3d 645 (1994).

The parties had taken discovery and filed cross-motions for summary judgment in the federal action before the Court of Chancery ruled on the two motions pending there. In October 1995, the Court of Chancery acted on the first motion, denying Acierno's motion to dismiss or stay. In November 1995, the federal court granted, in part, the parties' cross-motions for summary judgment. A few days later, after being advised of the federal court's decision, the Court of Chancery granted the County's motion for summary judgment, without referring to the federal court's most recent decision.

## II. ACIERNO'S MOTION TO DISMISS OR STAY

■ The law governing a trial court's discretion to grant a motion to dismiss or stay in favor of litigation pending in another forum is well settled. The court should consider:

> (1) The relative ease of access to proof; (2) the availability of compulsory processes for witnesses; (3) the possibility of the view of the premises, if appropriate, and (4) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.
>
> We add a further factor—whether or not the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction.

*General Foods Corp. v. Cryo–Maid, Inc.,* Del.Supr., 198 A.2d, 681, 684 (1964). The trial court's discretion "should be exercised freely in favor of the stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues ..." *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Engineering Co.,* Del. Supr., 263 A.2d 281, 283 (1970). By contrast, where the Delaware action is the first filed, a motion to stay or dismiss should be granted only in a rare case, after defendant has es-

tablished that litigating in Delaware will cause undue hardship and inconvenience. *Chrysler First Business Corp. v. 1500 Locust Ltd. Partnership,* Del.Supr., 669 A.2d 104, 107 (1995).

Acierno argues that the trial court erred in giving the County's declaratory judgment action first-filed status. The federal action was filed only minutes after the County's state action and Acierno argues that the County should not be allowed to benefit from its "race-to-the-courthouse" tactics. If the County's action is not a accorded first-filed status, Acierno argues that a stay is mandated because: (i) the parties to the two actions are the same; (ii) the issue raised in the state action is being litigated in the federal action; (iii) the federal court is capable of providing prompt and complete relief; and (iv) a stay would avoid wasteful duplication of limited judicial resources.

■ We find that the Court of Chancery properly considered the relevant factors in exercising its discretion to deny the stay. The trial court did *not* give any weight to the fact that the County's action technically was the first filed. Acierno was not required to prove hardship and inconvenience and the trial court gave no deference to the County's choice of forum. Rather, the Court of Chancery focused on the fact that the denial of a building permit is a distinctly local government issue. Given the narrow, state law issue presented, the trial court concluded that it would not be more convenient to litigate in the federal forum. The court also determined that it could provide prompt and full relief and that denial of the stay would not result in duplicative litigation because resolution of the state law issues in the state court would eliminate the need for those issues to be considered by the federal courts.

The Court of Chancery's analysis properly considered those factors that would make disposition of the case "easy, expeditious and inexpensive" as well as the applicability of Delaware law. Its conclusions were sound, and its discretionary ruling will not be disturbed.

## III. THE COUNTY'S MOTION FOR SUMMARY JUDGMENT

■ The one issue presented by the County's motion for summary judgment was the legal effect of Acierno's failure to appeal from an adverse decision by the County Board of Adjustment. Pursuant to *9 Del.C.* § 1353(a), "[a]ny person aggrieved by any decision of the Board of Adjustment . . . may present to the Superior Court a petition duly verified alleging that such decision is illegal in whole or in part, and specifying the grounds of illegality." This statutory right of appeal must be exercised within 30 days after the filing of the Board of Adjustment' decision. *Id.* Acierno chose not to appeal, and the Court of Chancery ruled that, "Delaware law precludes Acierno from challenging the finality of the Board of Adjustment's decision in the State court system." *New Castle County v. Acierno,* Del.Ch., C.A. No. 13302–NC, slip op. at 3, Steele, V.C., 1995 WL 694385 *2 (November 9, 1995). That holding is a correct statement of the law. *See Wiggin v. Mummert,* Del.Ch., C.A. No. 8556, Hartnett, V.C., 1992 WL 113455 (May 26, 1992), *aff'd.,* Del.Supr., 620 A.2d 858 (1993).

The parties do not seriously question the validity of this limited holding. Rather, they focus their arguments on the preclusive effect, if any, of the District Court's arguably contrary holding. A few days before the Court of Chancery issued its opinion granting summary judgment to the County, the District Court issued an opinion granting, in part, the parties' cross-motions for summary judgment. *Acierno v. New Castle County,* D.Del., C.A.No. 93–579–385–SLR, Robinson, J., 1995 WL 704976 (November 1, 1995). In its opinion, the District Court stated:

> The court once again rejects the notion that the Board of Adjustment's January 14, 1994 decision is binding in all respects on this court. . . . The court likewise rejects the notion that the Board is the 'final decisionmaker in the permitting process' for purposes of plaintiff's constitutional claims. The requirement is that local authorities be given the opportunity to 'define the application of the zoning ordinance and define[ ] the harm to the owner.' *Tay-*

*lor Inv., Ltd. v. Upper Darby TP.,* 983 F.2d 1285, 1291 (3d Cir.), *cert. denied,* [510 U.S. 914,] 114 S.Ct. 304 [126 L.Ed.2d 252] (1993). There is no indication in the Third Circuit's decisions regarding the 'finality rule' that the slate is wiped clean and the federal court is precluded from reviewing the totality of the circumstances underlying the allegations of constitutional violations. *Id.* at 1292–93.

*Id.,* slip op. at 1–2, n. 1, 1995 WL 704976 *23 n. 1.

■ Acierno argues that the District Court's conclusions about the effect of the Board of Adjustment decision should have been adopted by the Court of Chancery under the doctrine of collateral estoppel. That doctrine, also known as issue preclusion, provides that, "where a question of fact essential to the judgment is litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action." *Columbia Casualty Co. v. Playtex F.P., Inc.,* Del.Supr., 584 A.2d 1214, 1216 (1991) (quoting *Tyndall v. Tyndall,* Del. Supr., 238 A.2d 343, 346 (1968)). The "preclusive effect of a foreign judgment is measured by standards of the rendering forum." *Id.* at 1217. Under the test recently articulated by the United States Court of Appeals for the Third Circuit, issue preclusion applies if, "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) [the issue was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Graham v. Internal Revenue Service,* 3d Cir., 973 F.2d 1089, 1097 (1992).

In this case, the issues presented to the two courts are not the same. The Court of Chancery was asked to decide whether the Board of Adjustment's decision became final and binding by reason of Acierno's failure to appeal from that decision. The Court of Chancery decided, as a matter of State law, that it did. The District Court was asked to decide whether Acierno's constitutional rights had been violated as a result of the actions of the County, including the Board of Adjustment. The District Court determined

that the Board of Adjustment's decision is not controlling for purposes of that court's constitutional analysis.

██ Whether the District Court's conclusion is correct or not is irrelevant, and we offer no view on that subject. All that matters, for purposes of an issue preclusion inquiry, is whether the two decisions purported to address the same issue. They did not, and the Court of Chancery correctly addressed the state law issue without regard to any federal constitutional determinations being made by the District Court.

Based upon the foregoing, the decisions of the Court of Chancery denying Acierno's motion to dismiss or stay and granting the County's motion for summary judgment are AFFIRMED.