IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM P. INGRAM and<br>MARGARET ANNE INGRAM, | § | No. 32, 2014 |
| | § | |
| Defendants Below-<br>Appellants, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware, |
| BETTY F. THORPE, | § | in and for Kent County |
| | § | C.A. No. 97C-02-016 (RBY) |
| Plaintiff Below-<br>Appellee. | § | |

Submitted: July 25, 2014
Decided: September 26, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **VALIHURA**, Justices

**O R D E R**

This 26th day of September 2014, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The defendants-appellants, William and Margaret Anne Ingram, filed this appeal from the Superior Court's decision, dated October 22, 2013, granting summary judgment to the plaintiff-appellee, Betty Thorpe, on her claim for breach of a conditional sales agreement.[1]   We find no merit to the Ingrams' appeal. Accordingly, we affirm the Superior Court's judgment.

---

[1] *Thorpe v. Ingram*, 2013 WL 5769878 (Del. Super. Oct. 22, 2013).

(2)     The record reflects that Thorpe and her then-husband, Marvin Thorpe, entered into a conditional sales agreement ("the Agreement") with the Ingrams in December 1994 for the purchase of certain real property identified as 263 Troon Road, Dover, Delaware ("the Dover property"). The Ingrams were licensed real estate agents, although that fact was not reflected in the Agreement. Under the Agreement, the Thorpes made a down payment consisting of $20,000 in cash plus the conveyance of a 1.3 acre parcel of land valued at $35,000 ("the Wyoming property"). The Agreement stated that if the Wyoming property sold for more or less than the assigned value, the loan balance would be adjusted accordingly. The Ingrams later sold the Wyoming property for $39,900, but they did not credit the Thorpes with the difference against the loan balance.

(3)     After Thorpe and her husband separated, they moved out of the Dover property and rented it to a third party. On December 6, 1995, after they had vacated the Dover property, the Thorpes received a 60-day notice of default from the Ingrams based upon their failure to pay the November and December rent installments and to pay delinquent taxes. On February 6, 1996, Mrs. Thorpe's then-attorney forwarded a check to the Ingrams to pay the November and December installments and to pay insurance.[2]

---

[2] Counsel did not pay the delinquent taxes because the taxes for 1995 already had been paid and taxes for any prior years were the Ingrams' responsibility.

(4) On February 7, 1996, William Ingram acknowledged receipt of the check but returned it to Thorpe's counsel because it was a "non-negotiable out-of-state check." The Agreement stated that if the Thorpes made full payment of the installment(s) for which they were in breach within 60 days of notice of the breach, the Agreement would continue in full effect. The Agreement contained no specific provisions on how payment of the installments or payment of any breach was required to be made.

(5) Thorpe filed a complaint against the Ingrams with the Delaware Real Estate Commission. The State prosecuted the complaint at a hearing held on May 8, 1997. The Ingrams appeared at the hearing and requested a continuance on the ground that Thorpe had filed a lawsuit against them in the Superior Court. The Commission held that Thorpe's lawsuit did not prohibit the Commission from determining whether the Ingrams, as licensed real estate agents, had engaged in professional conduct warranting discipline. The Ingrams chose to leave the hearing after the Commission denied their request for a continuance even though they were informed that the hearing would continue in their absence and the Commission would make a decision based on the evidence presented.

(6) At the conclusion of the State's presentation, the Board found that the Ingrams' conduct in connection with the Agreement warranted sanctions because: (i) the Ingrams never provided the Thorpes with the required amortization

3

schedule; (ii) the Ingrams never adjusted the loan balance to credit the Thorpes with the difference from the sale of the Wyoming property, which was required under the Agreement; (iii) the Ingrams never provided the Thorpes with the required seller's disclosure; (iv) the Ingrams attempted to buy Mr. Thorpe's interest in the Agreement for $10 without obtaining Mrs. Thorpe's consent in writing; and (v) the Ingrams failed to identify themselves as licensed real estate agents when they entered into the Agreement with the Thorpes. The Commission concluded that the Ingrams' misconduct warranted revocation of their respective real estate licenses.

(7) Thorpe filed her complaint for damages in the Superior Court in February 1997, alleging that the Ingrams had breached the Agreement for several reasons. She sought damages equaling the value of the down payment. On September 23, 1998, the Superior Court granted summary judgment to Thorpe, holding that she was entitled to rescind the Agreement under 25 *Del. C.* § 314(c) because the Ingrams had failed to provide her with an amortization schedule prior to "settlement," which the Superior Court held would not occur until 2025 when Thorpe made the final payment to the Ingrams. Following an inquisition hearing on December 8, 1998, the Superior Court entered judgment in favor of Thorpe for $59,900, representing the full value of her down payment in cash and property.

(8) The Ingrams appealed the Superior Court's decision. This Court reversed the Superior Court's decision on appeal, holding that the Superior Court misinterpreted the term "settlement" in 25 *Del. C.* § 314(c) and concluding that the Agreement was not voidable based on the Ingrams' failure to provide an amortization schedule because Thorpe had not attempted to rescind the Agreement before "settlement."[3] We remanded the matter for further action on Thorpe's remaining claims, including her claims that the Ingrams had breached the Agreement by refusing to recognize her cure of the default and excluding her from the property after the default.

(9) Three months after this Court's decision on appeal, the Ingrams filed for bankruptcy. The Superior Court action remained dormant until the bankruptcy action was closed in 2008. After being transferred to the active docket, the parties engaged in discovery and, thereafter, filed cross-motions for summary judgment. The Superior Court granted Thorpe's motion for summary judgment, holding that the Ingrams had breached the Agreement by rejecting Thorpe's proffered cure on the ground that it was a "non-negotiable out-of-state check." The Superior Court concluded that this was not a valid basis under the Agreement for the Ingrams to reject Thorpe's proffered cure. The Superior Court further held that the Ingrams were collaterally estopped from challenging the Commission's findings that the

---

[3] *Ingram v. Thorpe*, 747 A.2d 545 (Del. 2000).

5

Ingrams had violated the Agreement by failing to credit Thorpe with the difference from their sale of the Wyoming property and by failing to provide Thorpe with a seller's disclosure statement. This appeal followed.

(10) The Ingrams raise four issues in their opening brief on appeal. First, they contend that the Superior Court misconstrued the Agreement when it concluded that Thorpe's attempt to cure the default with an out-of-state check was valid. Second, the Ingrams argue that the Superior Court erred in finding that they were collaterally estopped from challenging the Commission's conclusions that they had violated the Agreement by failing to properly credit Thorpe after the sale of the Wyoming property and for failing to provide Thorpe with a seller's disclosure statement. Third, the Ingrams argue that the Superior Court erred in awarding Thorpe the full value of the down payment because Mr. Thorpe had assigned his rights under the Agreement to the Ingrams. Finally, the Ingrams contend that the Superior Court denied them due process when it failed to amend the scheduling order.

(11) We review the Superior Court's grant of summary judgment *de novo*.[4] In the absence of any ambiguity, the parties are bound by the plain meaning of their contract.[5] In this case, as the Superior Court found, the terms of the contract

---

[4] *Williams v. Geier*, 671 A.2d 1368, 1375 (Del. 1996).

[5] *Watkins v. Beatrice Companies, Inc.*, 560 A.2d 1016, 1021 (Del. 1989).

did not state that a payment to cure a default had to be made in cash or by an in-state check. The Ingrams' contention that that is what the parties intended when they included a provision in the Agreement stating that "time is of the essence" is unsupported by a plain reading of the Agreement. Under the circumstances, we find no error in the Superior Court's grant of summary judgment to Thorpe on the ground that the Ingrams violated the Agreement by refusing her cure of the default.

(12) Furthermore, we find no error in the Superior Court's conclusion that the Ingrams were barred by collateral estoppel from re-litigating the Commission's conclusions that the Ingrams had breached the agreement by failing to issue a credit of $4,900 to Thorpe against the balance of the loan after the Ingrams' sold the Wyoming property for $39,900 and by failing to provide Thorpe with a seller's disclosure statement. The Superior Court applied well-established law when it determined that collateral estoppel applied because: (i) the issues decided by the Commission were identical to those presented in the Superior Court; (ii) the Commission's decision was a final adjudication on the merits; (iii) the Ingrams were parties to the Commission's proceedings; and (iv) the Ingrams had a full and fair opportunity to litigate those issues before the Commission (even though they chose not to participate).[6] We find no merit to the Ingrams' argument on appeal.

---

[6] *Acierno v. New Castle County*, 679 A.2d 455, 459 (Del. 1996).

(13) The Ingrams next contend that the Superior Court erred in concluding that Thorpe was entitled to damages in the full amount of the down payment on the Dover property. The Ingrams contend that Mr. Thorpe assigned his rights under the Agreement to them and that one-half of the judgment should be credited to them.

(14) The Ingrams did not raise this argument in their motion for summary judgment or in their response to Thorpe's motion for summary judgment. The Superior Court was not required to consider this argument, which was not raised until the Ingrams filed a motion for reargument, because it was not fairly presented for consideration. We find no error in the Superior Court's denial of reargument based on this newly-raised claim.[7]

(15) Finally, the Ingrams contend that the Superior Court abused its discretion in denying their motion to extend the discovery schedule. The period of discovery had expired on July 16, 2013. The Ingrams filed their motion to extend discovery on September 1, 2013. In its summary judgment opinion, the Superior Court noted that the Ingrams had been uncooperative during the course of discovery, which had resulted in delays and required court intervention. Given

---

[7] See Americas Mining Corp. v. Theriault, 51 A.3d 1213, 1263-64 (Del. 2012) (holding that an issue raised on reargument was procedurally barred because it was not fully and fairly presented in the briefing). Moreover, the Commission found that the Ingrams' attempt to have Mr. Thorpe assign his rights under the Agreement was invalid and constituted a further breach of the Agreement.

their dilatory conduct, we find no abuse of discretion in the Superior Court's refusal to extend discovery.[8]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Randy J. Holland
Justice

---

[8] *See Americas Mining Corp.*, 51 A.3d at 1238.

9