# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOE MAGGIO and TWOFORONE, | ) | |
| LLC d/b/a JOE MAGGIO REALTY, | ) | |
| Plaintiffs, and | ) | C.A. No. S23C-08-029 RHR |
| | ) | |
| DE BEACHES REGIONAL | ) | |
| REALTY, LLC, | ) | |
| Intervening Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DDTM REALTY, LLC d/b/a | ) | |
| KELLER WILLIAMS REALTY, | ) | |
| MATTHEW FETICK, and FUTURE | ) | |
| SELF HOLDINGS, LLC, | ) | |
| Defendants. | ) | |

Submitted: October 1, 2025
Decided: April 29, 2026

## MEMORANDUM OPINION

*Upon Consideration of Defendants Matthew Fetick and Future Self Holdings,*
*LLC's Motion for Judgment on the Pleadings,*
**GRANTED in part and DENIED in part**,

*Defendants Matthew Fetick and Future Self Holdings, LLC's Motion to Dismiss*
*DE Beaches Regional Realty, LLC's First Amended Complaint in Intervention*,
**STAYED**,

*and DDTM Realty, LLC's Motion for Leave to Amend its First Amended Answer to*
*Add Crossclaims and Counterclaims*,
**GRANTED in part and STAYED in part**.

Angelica M. Mamani, Esq., HUDSON, JONES, JAYWORK & FISHER, LLC, Dover, Delaware, *Attorney for Plaintiffs Joe Maggio and TWOFORONE, LLC d/b/a Joe Maggio Realty*.

Neil R. Lapinski, Esq., Geoffery A. Boyleston, Esq., Phillip Giordano, Esq., and Madeline R. Silverman, Esq., GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware, and John Eastlack, Esq., and Emily Palladinetti, Esq., LAULETTA BIRNBAUM, LLC, Sewell, New Jersey, *Attorneys for Defendant DDTM Realty, LLC d/b/a Keller Williams Realty and Intervening Plaintiff DE Beaches Regional Realty, LLC*.

Andrew H. Lippstone, Esq., LIPPSTONE LAW, LLC, New Castle, Delaware, *Attorney for Defendants Matthew Fetick and Future Self Holdings, LLC*.

**Robinson, J.**

## BACKGROUND

Joe Maggio, a licensed real estate broker in the Rehoboth Beach, Delaware area, wanted to wind down his business and lessen his management responsibilities to prepare for retirement. In 2019, he engaged in discussions with Matthew Fetick, another real estate broker, and the two reached an agreement dated March 17, 2020 (the "Agreement") whereby Maggio would transfer ownership and management of his realty company, TWOFORONE, LLC d/b/a Joe Maggio Realty ("TFO") to DDTM Realty, LLC ("DDTM"), an entity controlled by Fetick. DDTM operated as a franchisee of Keller Williams Realty, Inc. ("KWRI"), an international real estate brokerage. Under the Agreement, Maggio would continue to work for DDTM. He would also receive an initial cash payment and would continue to receive a percentage of the net profit from DDTM for five years. DDTM would assume certain liabilities of Maggio's business, including the office's lease and a fit-out loan.

The arrangement did not go as Maggio intended. Maggio alleges that Fetick restructured DDTM to substantially reduce the compensation Maggio anticipated receiving under the Agreement. For example, he was to receive his first profit share distribution in January 2021, but he received nothing. Maggio claims that, as of the filing of his amended complaint, the only compensation he had received was a commission payment of $691.72. He also avers that the fit-out loan is still in his name. Maggio alleges that although DDTM had several successful years between

2020 and 2023 the business has no money because Fetick shifted assets from DDTM to Future Self Holdings, LLC ("FSH")—an entity jointly owned by Fetick and David Williams—to avoid debts and obligations, including those owed to Maggio. At some point, FSH became the sole owner of DDTM.

Maggio and TFO filed a bare-bones initial complaint on August 22, 2023 against DDTM alleging breach of contract. He then filed an amended complaint on December 15, 2023 that added Fetick and FSH as defendants. The amended complaint added the following claims: fraud, breach of implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiffs also evoked the personal participation doctrine and seek punitive damages.[1]

In 2023, before Maggio filed his complaint, Fetick entered into discussions with John Clidy and Michele McBride about selling DDTM's business and assets to their entity, DE Beaches Regional Realty, LLC ("DE Beaches"). They executed a letter of understanding on March 2, 2023 with an effective date of March 1, 2023 (the "LOU"). Unfortunately, the LOU is poorly drafted and whether it is a binding contract or merely an agreement to negotiate confidentially is an issue that must be resolved. Under the LOU, FSH would sell 80% of its interest in DDTM to DE Beaches for $300,000.00. DE Beaches paid DDTM $300,000.00 the day after the

---

[1] Plaintiffs have since acknowledged these claims should not have been filed as separate counts. In their briefing, Fetick and FSH state that they do not seek dismissal of the claim for receipt of fraudulent transfer.

parties signed the LOU. The LOU also stated that Fetick would be personally liable for any debts that FSH failed to disclose to DE Beaches, and that if DE Beaches was forced to assume any undisclosed liabilities, Fetick's remaining interest in DDTM would be reduced to offset those debts. The LOU listed DDTM's liabilities that Fetick acknowledged at the time of the execution of the LOU. Fetick was also required to turn over financial control of DDTM to McBride and to resign as operating principal. Pursuant to the LOU, Fetick sent a resignation letter to KWRI.

This arrangement did not go as planned either, and on July 24, 2024, DE Beaches moved to intervene in this litigation and filed a complaint in intervention against DDTM, Fetick, and FSH on August 15, 2024. On December 16, 2024, DE Beaches Realty filed an amended complaint in intervention seeking: (i) declaratory judgment against Fetick and FSH, (ii) breach of contract against FSH, (iii) conversion against Fetick, (iv) unjust enrichment (in the alternative) against Fetick and FSH, and (v) fraud and misrepresentation against Fetick and FSH. The complaint in intervention asks this court to declare that: (i) the LOU is a valid and binding agreement, (ii) FSH's 20% interest in DDTM has been extinguished in accordance with the terms of the LOU, (iii) DE Beaches is the sole member of DDTM, and (iv) Fetick is personally responsible for all liabilities of DDTM.

The amended complaint in intervention alleges that Fetick made false representations about the value of DDTM—both its liabilities and assets—that DE

5

Beaches used to value DDTM. Among the liabilities that DE Beaches alleges Fetick failed to disclose is the Agreement with Maggio. In addition to the Agreement with Maggio, the amended complaint in intervention enumerates other deceitful actions allegedly taken by Fetick, including his withdrawal of money from the business account and termination of health and dental insurance policies for employees. DE Beaches claims that these acts cause Fetick to forfeit his remaining 20% interest in DDTM and that Fetick is personally responsible for any liabilities in excess of that 20% interest.

Adding another layer to this dispute, on July 25, 2024—the day after DE Beaches filed its motion to intervene in this case—Fetick and his business partner David Williams filed an action in the United States District Court for the Eastern District of Pennsylvania against several individual defendants associated with KWRI, including Clidy and McBride.[2] The federal litigation alleges that those defendants engaged in a racketeering scheme whereby employees or owners of KWRI would exert leverage over local realty centers to the point where they would be forced to sell to KWRI. One of those local realty companies is DDTM. Although the federal complaint does not name KWRI as a defendant, the federal court found that the parties were bound by the arbitration clause in the KWRI franchise

---

[2] *Fetick, et al. v. Keller, et al.*, C.A. No. 2:24-cv-3329 KNS.

6

agreement and stayed the matter pending arbitration. This federal litigation is one reason Fetick and FSH seek dismissal of the amended complaint in intervention.

DISCUSSION

This case has been drawn out in large part due to several changes in counsel for the defendants. At some point, when the defendants were not represented, plaintiffs filed motions to compel and for default judgment, and a request for an inquisition hearing. These motions were stayed after new counsel for defendants entered their appearance. The following motions are ripe for decision.

**A.  Defendants Fetick and FSH's Motion for Judgment on the Pleadings as to Plaintiff's Complaint**

Superior Court Civil Rule 12(c) allows a party to move for judgment on the pleadings once the pleading stage has closed.[3] Under this rule, the court must "view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party."[4] The court assumes the truth of "all well-pled allegations of fact in the complaint," and accords "the non-moving party the same benefits as a plaintiff defending a motion under Civil Rule 12(b)(6)."[5]

    1.    Fraud

---

[3] Super. Ct. Civ. R. 12(c).
[4] *D'Antonio v. Wesley College, Inc.*, 2023 WL 9021767, at *2 (Del. Super. Ct. Dec. 29, 2023).
[5] *Id.*

Fetick and FSH claim that the fraud claim is barred by the three-year statute of limitations and that the amended complaint recites insufficient facts to support a claim of fraud. They argue that the three years started at the time of the signing of the Agreement, but this action was not filed until August 22, 2023.

Although this court finds that the fraud claim is not barred by the statute of limitations, it must be dismissed because Maggio has failed to adequately plead all necessary elements in the amended complaint.

Typically, a cause of action for fraud accrues at the time the fraud is perpetrated. There are tolling doctrines, however, that can delay the limitations period until the fraud is discovered: "there must have been no observable or objective factors to put a party on notice of an injury, and plaintiffs must show that they were blamelessly ignorant of the act or omission and the injury."[6] In the present matter, with the limited facts before the court at this time, it appears Maggio had no reason to become aware of the alleged fraud until he was entitled to receive his profit distribution share in January 2021. Until that point, he apparently continued to operate his business, unaware that he would receive no share of profits pursuant to the Agreement.

The elements of fraud include:

(1) a false representation made by the defendant; (2) the defendant knew or believed the representation was false or was recklessly

---

[6] *Crest Condo. Assoc. v. Royal Plus, Inc.*, 2017 WL 6205779, at *3 (Del. Super. Ct. Dec. 7, 2017).

indifferent to its truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted or refrained from acting in justifiable reliance on the representation; and (5) damage resulted from such reliance.[7]

Fraud claims must be pled with particularity pursuant to Superior Court Civil Rule 9(b). "Pursuant to that Rule, a plaintiff must plead with particularity, the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the representation; and what that person(s) gained from making the misrepresentation."[8]

Here, Maggio's fraud claim arises from the underlying contract formed between himself, DDTM, and Fetick. Maggio alleged in the amended complaint that DDTM and Fetick falsely represented the intent to share profits and assume liabilities of TFO. Maggio claims that he executed the Agreement in reliance on the misrepresented intent to share profits and that DDTM and Fetick intended for him to rely on their false representations.

Maggio has failed to address the element that a defendant knew or believed the representations made were false or was otherwise recklessly indifferent. Maggio's assertions on this claim state that DDTM and Fetick made false representations regarding profit sharing and assumption of liabilities, which induced

---

[7] *Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*, 319 A.3d 909, 932 (Del. Super. Ct. June 27, 2024).
[8] *Id.* at 933 (quoting *Valley Joist BD Holdings., LLC v. EBSCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021))(internal quotation marks omitted).

9

his reliance. It appears to the court that Maggio believes that DDTM and Fetick's failure to pay him his distributions, assume the fit-out loan, or compensate him for work done as a designated agent pursuant to the Agreement amount to false representations. These claims, however, sound in breach of contract, which Maggio has also brought in his amended complaint. Without a more specific pleading that DDTM and Fetick knew when entering the Agreement that they intended to mislead or induce Maggio's reliance on false assertions, the fraud claim cannot stand.

Additionally, "one seeking recovery in both fraud and breach-of-contract must plead a different injury inflicted by the tort than is accounted for by the duties under the contract."[9] If this is not done, it invites dismissal of the fraud claim.[10] In the amended complaint, Maggio states that he has "been damaged as a result, and is entitled to recover all funds owed to him under the contract, including expected future earning to which he would have been entitled had the contract not been breached."[11] The damages asserted arise from contractual duties, not a separate injury as required for the fraud claim to stand. Therefore, Maggio's fraud claim must be dismissed.

2.     Covenant of Good Faith and Fair Dealing

---

[9] *Envolve Pharmacy Solutions, Inc. v. Rite Aid Headquarters Corp.*, 2021 WL 140919, at *8 (Del. Super. Ct. Jan. 15, 2021).
[10] *Id.*
[11] D.I. Pls.' Am. Compl., at 9.

For the implied covenant of good faith and fair dealing to be sufficiently pled, "a complaint must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[12] This covenant infers "contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated."[13] It applies only to "developments that could not be anticipated, not developments that the parties simply failed to consider . . . ."[14] Contractual terms will only be implied if the asserting party "proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected."[15] This requires the court to "assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal."[16]

Maggio's amended complaint asserts that DDTM and Fetick's restructuring of agent teams, which reduced his compensation, was contrary to what DDTM and Fetick had promised and assured him of. Maggio claims that Fetick and FSH asserted that profit share disbursements were based on the assignment of agents to Maggio's downline. Because the Agreement does not contain language with this condition,

---

[12] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1117-18 (Del. 2022).
[13] *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).
[14] *Id.*
[15] *Id.*
[16] *Id.*

11

there exists a gap in the Agreement. Fetick and FSH allege that the terms of the Agreement, specifically the compensation structure, govern this claim, therefore, the implied covenant cannot be invoked. Fetick and FSH also assert that there is no gap in the Agreement and that the restructuring of its agents did not affect the compensation Maggio would receive.

Based on the Agreement's language itself, it is unclear where the net profit, which Maggio's compensation arises out of, is derived from specifically. The Agreement states "[n]et profit is defined as the 'owner profit' after [Keller Williams'] profit share is calculated and paid."[17] Maggio's percentage of compensation depends on the amount of net profit. For example, in his first year under the Agreement, Maggio was to receive 70% of the first $250,000 then 20% on everything over $251,000.[18] At this stage in the proceedings, it is not clear whether the restructuring of agents and assigning them to different teams would have an impact on net profits, which in turn would impact the amount of compensation Maggio would receive. Because this is a disputed issue of fact, this claim survives the motion.

3.     Unjust Enrichment

---

[17] D.I. 92, Def. DDTM Realty LLC's Reply in Supp. of its Mot. for Leave to Amend Answer, Ex. A at 3.
[18] *Id.*

12

Fetick and FSH argue that the Agreement alone governs the parties' relationship, and that the unjust enrichment claim must be dismissed. "Delaware courts have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract."[19] If, however, the contract does not comprehensively govern the parties' relationship or does not govern a specific aspect of the parties' relationship, the contract will not preclude an unjust enrichment claim.[20] Further, unjust enrichment as an alternative to breach of contract is "generally only allowed where there is doubt surrounding the enforceability or the existence of the contract."[21]

Maggio argues that the following are currently in dispute: (i) whether the Agreement is void, (ii) who owns DDTM, (iii) who is in control of DDTM, (iv) who is liable in this action, (v) who received the benefit of sale of TFO to DDTM; (vi) and whether there was a sale of TFO to DDTM. Maggio alleges that his unjust enrichment claim must continue through discovery and until enforceability of the Agreement has been determined. Maggio's complaint, however, does not raise any claims regarding the validity of the Agreement. Rather, much of Maggio's argument relies on the provisions in the Agreement. Fetick and FSH do not dispute the

---

[19] *Nemec*, 991 A.2d at 1130.
[20] *Aureus Holdings, LLC v. Kubient, Inc.*, 2021 WL 3465050, at *5 (Del. Super. Ct. Aug. 6, 2021).
[21] *Envolve Pharmacy Solutions, Inc.*, 2021 WL 140919, at *9.

13

enforceability of the Agreement. Only DDTM, who is not a party to this motion, has raised an issue as to the validity and enforceability of all contracts at issue here.

Maggio's attempt to raise an issue of contract validity in his response to Fetick and FSH's motion is not sufficient to permit an unjust enrichment claim where a breach of contract claim has been raised. The unjust enrichment claim in the amended complaint raises issues with DDTM and Fetick failing to make payments on the fit-out loan, failing to pay Maggio his share of profits, and failing to pay him for personal labor, all of which are comprehensively covered in the contract. Additionally, without doubt as to the enforceability of the Agreement, the claim cannot stand against Fetick and FSH. Therefore, Maggio's unjust enrichment claim must be dismissed.

**B.     Defendants Fetick and FSH's Motion to Dismiss DE Beaches' First Amended Complaint in Intervention**

Superior Court Civil Rule 12(b)(1) allows parties to move to dismiss a claim for lack of subject matter jurisdiction.[22] The burden rests on the movant who need only show that this court lacks subject matter jurisdiction to succeed.[23] In reviewing

---

[22] Del. Super. Ct. Civ. R. 12(b)(1).
[23] *Airbase Carpet Mart, Inc. v. Aya Assoc., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Ct. Dec. 15, 2015).

14

the motion, the court "may consider documents outside the pleadings and need not accept Plaintiff's factual allegations as true."[24]

Fetick and FSH allege that this court lacks subject matter jurisdiction because the arbitration clause in the market center license agreement between KWRI and DDTM (the "MCLA") requires business disputes to be arbitrated. Fetick and FSH primarily rely on the federal court's decision and McBride's arguments before it for enforcing the arbitration clause. DE Beaches argues that the MCLA does not govern because the LOU is separate and the dispute between DE Beaches, Fetick, and FSH is an intracompany ownership dispute.

1.      Effect of the Federal Court's Order

This court must first consider what impact the federal court's order to stay the action pending arbitration has here. Many doctrines that would restrict this court from making a decision on this issue, such as collateral estoppel or the Full Faith and Credit clause, are dependent on the federal court issuing a final judgment.[25] The

---

[24] *Donofrio v. Peninsula Healthcare Services, LLC*, 2022 WL 1054969, at *2 (Del. Super. Ct. Apr. 8, 2022)(internal quotation marks omitted).

[25] *See PVP Aston, LLC v. Fin. Structures Ltd.*, 2023 WL 2728775, at *8 (Del. Super. Ct. Mar. 31, 2023)("[T]his Court must determine whether . . . 2) the prior action has been finally adjudicated on the merits . . . ."); *see also Cal. State Teachers' Ret. Sys. v. Alvarez*, 179 A.3d 824, 839 (Del. 2018)("[W]e have acknowledged the importance of the Full Faith and Credit Clause of the U.S. Constitution, which implicates principles of comity and respect for the judgments of other courts."); *see also In re RJR Nabisco, Inc. S'holder Litig.*, 576 A.2d 654, 662 n.16 (Del. Ch. 1990)("With respect to judicial proceedings, the clause only requires full faith and credit to be accorded to final judgments.").

federal court's order to stay the action before it is not a final judgment.[26] Additionally, Fetick and FSH do not allege collateral estoppel, other than in passing reference, or attempt to prove its elements. Rather, they reference the federal court's order in support of its claim that this court lacks subject matter jurisdiction because of the arbitration clause.

Other well-settled Delaware law supports the conclusion that the federal court's order does not divest this court of jurisdiction. In the context of *forum non conveniens*, the Delaware Supreme Court has found that "where the Delaware action is the first filed, a motion to stay or dismiss should be granted only in a rare case, after defendant has established that litigating in Delaware will cause undue hardship and inconvenience."[27] Additionally, this court may exercise its discretion freely and has the "power to manage its own docket, including issuing a stay pending the resolution of an arbitration, on the basis of comity, efficiency, or common sense."[28] For these reasons, this court is not bound by the federal court's order to stay its action pending arbitration.

2. The MCLA's Arbitration Clause

---

[26] 9 U.S.C. § 16(b) ("Except as otherwise provided . . . an appeal may not be taken from an interlocutory order – (1) granting a stay of any action under section 3 of this title; (2) directing arbitration to proceed under section 4 of this title; (3) compelling arbitration under section 206 of this title . . . .").

[27] *Acierno v. New Castle Cty.*, 679 A.2d 455, 458 (Del. 1996).

[28] *Julian v. Julian*, 2009 WL 2937121, at *8 (Del. Ch. Sept. 9, 2009); *see also Acierno*, 679 A.2d at 458.

Next, this court must consider Fetick and FSH's argument that this court lacks subject matter jurisdiction because of the arbitration clause in the MCLA. DE Beaches claims that its action against Fetick and FSH is solely an intracompany dispute intended to determine the ownership rights of DDTM. It asserts that the MCLA's arbitration clause does not govern because the dispute arises from the LOU.

The arbitration clause in the MCLA extends to all disputes arising from it.[29] KWRI and Fetick, on behalf of DDTM, signed the MCLA. The MCLA includes a clause discussing the transfer of the interest in the company by the licensee.[30] "Licensee" is defined in the MCLA as "the entity with whom Company has entered into this [a]greement to conduct business as a Keller Williams Realty Market Center, and also means other entities with whom Company has entered into license agreements to conduct business as a Keller Williams Realty Market Center."[31] The MCLA states that "neither Licensee nor any successor to any part of Licensee's interest in this license . . . shall sell, assign, transfer, . . . or otherwise encumber any direct or indirect interest in this [a]greement, in the Market Center or in Licensee without Company's prior written consent."[32] This language establishes that the sale

---

[29] D.I. 65, Defs. Fetick and FSH's Mot. to Dismiss the Compl. in Intervention, Ex. D at 72.
[30] *Id.* at 50.
[31] *Id.* at 13-14.
[32] *Id.* at 50.

17

of DDTM, which is the licensee bound by the MCLA, was governed by provisions in the MCLA.

Further, the arbitration clause extends to those disputes occurring between the members of the licensee's group.[33] The MCLA defined "Licensee's Group" to include the licensee, its principal, and other respective affiliates, successors, and assigns.[34] The MCLA defined "Licensee's Principals" to include the officers, directors, or managers of the licensee and all holders of an ownership interest in licensee.[35] The LOU established an agreement to sell 80% of the 100% ownership FSH had in DDTM to DE Beaches. The LOU was signed by Fetick and David Williams on behalf of FSH and McBride on behalf of DE Beaches. Fetick was originally the operating principal of DDTM and has an alleged interest remaining in the company. McBride is the area director for KWRI's greater Pennsylvania region.[36] Additionally, DE Beaches is a member of the licensee, DDTM's, group because it holds an ownership interest in DDTM according to the LOU.  Because of these roles, it is evident that the MCLA's arbitration clause extends to the dispute between

---

[33] *Id.* at 72.

[34] *Id.* at 14.

[35] *Id.*

[36] D.I. 65, Defs. Fetick and FSH's Mot. to Dismiss the Compl. in Intervention, Ex. B at 3; *see also In re Career Educ. Corp. Derivative Litig.*, 2007 WL 2875203, at *9 (Del. Ch. 2007)("When considering a motion to dismiss, the court also may take judicial notice of publicly filed documents, such as documents publicly filed in litigation pending in other jurisdictions.").

Fetick, a former principal and potentially a current interest holder of DDTM, and McBride, a director of KWRI.

In considering if this court lacks subject matter jurisdiction because of the arbitration clause in the MCLA, the threshold question is whether the parties agreed to arbitrate issues of arbitrability.[37] Intent of the parties to arbitrate issues of arbitrability is determined by the two-prong *Willie Gary* test.[38] In applying this test, a "clear and unmistakable" intent to arbitrate issues of arbitrability is shown if the arbitration clause: "(1) incorporates a set of arbitration rules that empower arbitrators to decide substantive arbitrability and (2) generally provides for arbitration of all disputes . . . ."[39] If these prongs are both met, the court does not have the power to decide issues involving arbitrability and cannot override the contract.[40]

The arbitration clause contained in the MCLA is tied to a mediation clause, which requires the parties to participate in non-binding mediation first if private negotiations do not resolve the dispute. If any part of the dispute remains after mediation, then arbitration is required. The arbitration clause states:

> If the parties (together with the Controlling Principals and Licensee's Principals or any member of Licensee's Group) cannot fully resolve and settle a Dispute through mediation within 30 days after the mediation conference concludes, all unresolved issues involved in the Dispute,

---

[37] *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 751 (Del. Ch. 2023).

[38] *James & Jackson, LLC v. Willie Gary, LLC*, 903 A.2d 76, 78 (Del. 2006).

[39] *BuzzFeed Media Enterprises, Inc. v. Anderson*, 2024 WL 2187054, at *5 (Del. Ch. 2024)(internal quotations omitted).

[40] *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019)).

19

except those excluded under Section 20.05, shall be submitted to binding arbitration . . . .[41]

The arbitration rules and facilities of the Mediation Organization, which is defined in the MCLA as "a professional dispute-resolution organization selected by Company and reasonably acceptable to Licensee," were to be used for the arbitration.[42] This is unless the company decided to select an organization other than the Mediation Organization. If this occurred, and the licensee objected, the American Arbitration Association's ("AAA") rules would apply instead. Because the agreement establishes a "set of arbitration rules that empower arbitrators to decide arbitrability," by asserting that the arbitration rules of a professional dispute resolution organization would govern and references the AAA as an alternative, the first prong has been met.[43]

The arbitration clause meets the second prong of the *Willie Gary* test. The mediation clause defines "dispute," which is referenced in the arbitration clause, to include:

> [A]ny claim, controversy or dispute (a "Dispute") that arises under or in relation to this [a]greement or arises between or among any member of Licensee's Group and Company, its Affiliates, Regional Representatives, Successors and Assigns and their Respective Directors, officers, shareholders, members, managers, partners,

---

[41] D.I. 65, Defs. Fetick and FSH's Mot. to Dismiss the Compl. in Intervention, Ex. D at 73.
[42] *Id.* at 72.
[43] *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1120 (Del. Ch. 2010).

20

attorneys, servants, employees, associates, independent contractors, agents, Regional Representatives, and representatives.[44]

Language including "any claim or controversy arising out of or relating to this agreement," is generally sufficient to meet the second prong of the *Willie Gary* test.[45] Because the definition of "dispute" contains that language, and the arbitration clause relies on this term, the second prong is met.

Therefore, because this test has established that the parties intended to arbitrate issues of arbitrability, the court lacks jurisdiction to hear the claims in the amended complaint in intervention at this time. Although Fetick and FSH initially sought dismissal of the amended complaint in intervention, they requested in their reply brief that the matter be stayed pending the outcome of the AAA arbitration that has commenced in Texas (the forum specified in the MCLA). Because of the nature of this case and the potential that it could affect other parties and claims before this court, the court finds that a stay pending the arbitrator's decision on the arbitrability of the claims is more appropriate.[46]

**C.      DDTM's Motion for Leave to Amend its First Amended Answer and to Add Crossclaims and Counterclaims**

---

[44] D.I. 65, Defs. Fetick and FSH's Mot. to Dismiss the Compl. in Intervention, Ex. D at 72.
[45] *Buzzfeed Media Enterprises, Inc.*, 2024 WL 2187054, at *5.
[46] *See Donofrio*, 2022 WL 1054969, at *7; *see also Diamond Materials, LLC v. Tutor Perini Corp.*, 2021 WL 1716969, at *1 (Del. Super. Ct. Apr. 30, 2021).

DDTM moves this court to allow it to amend its first amended answer to add crossclaims against Fetick and FSH and counterclaims against Maggio and TFO.

In response to the proposed crossclaims, Fetick and FSH argue that any amendments would be futile because the proposed crossclaims are subject to arbitration as ordered by the United States District Court for the Eastern District of Pennsylvania, discussed above. They also claim there is prejudice.

In response to the proposed counterclaims, Maggio and TFO allege that DDTM's motion should be denied on the grounds of futility, undue prejudice, and improper case management. Maggio and TFO also claim that the timing and nature of the proposed counterclaims is evidence that DDTM is acting in bad faith or with a dilatory motive.

Superior Court Civil Rule 15(a) allows a party to amend a pleading with leave of the court and that "leave shall be freely given when justice so requires."[47] While Delaware courts liberally grant motions to amend, the court "may deny an amendment when there is evidence of undue delay, bad faith, or dilatory motive on part of the movant, repeated failure to cure deficiencies, or prejudice."[48]

For the same reasons the complaint in intervention is stayed, DDTM cannot amend its answer to assert crossclaims against Fetick and FSH at this time.

---

[47] Super. Ct. Civ. R. 15(a).
[48] *Zenith v. CenterPoint*, 2022 WL 258950 at *1 (Del. Super. Ct. Jan. 27, 2022).

22

Therefore, to the extent DDTM wishes to amend to add those crossclaims, this motion is stayed in part pending the outcome of arbitration in the federal case.

As to the counterclaims DDTM seeks to add against Maggio and TFO, this court finds that justice requires all potential claims between these parties to be litigated. DDTM's proposed counterclaims include a declaratory judgment claim that requests a finding that the Agreement is null and void and a breach of contract claim asserting that Maggio breached the Agreement by failing to pay back his pro rata share of his signing bonus. The decision whether to allow an amendment in considering a "defendant's delay in its presentation, when coupled with the amendment's effect on the complexity of trial and the degree to which it prejudices plaintiff," is solely in this court's discretion.[49] Because of the nature of this case and the stage of this litigation, this court finds that justice requires that all possible claims be asserted. Therefore, DDTM's motion for leave to amend its amended answer to add its proposed counterclaims against Maggio and TFO is granted.

CONCLUSION

As discussed above, Fetick and FSH's motion to dismiss the fraud and unjust enrichment claims is granted, while the claim of breach of the covenant of good faith and fair dealing and receipt of fraudulent transfer may proceed. The motion to dismiss the amended complaint in intervention is stayed. DDTM's motion to amend

---

[49] *Itek Corp. v. Chi. Aerial Indus.*, 257 A.2d 232, 234 (Del. Super. Ct. Sept. 3, 1969).

the answer to assert crossclaims against Fetick and FSH is stayed, pending the outcome of the federal arbitration, but DDTM's motion to amend to add counterclaims against Maggio and TFO is granted. The parties are to provide a status report on the arbitration in the federal case within sixty days of this memorandum opinion.

IT IS SO ORDERED.